IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHELLE LOU, individually and on behalf of all others similarly situated,

    Plaintiff,

  v.

MA LABORATORIES, INC., ABRAHAM MA, CHRISTINE RAO, and CHRISTY YEE,

    Defendants.

No. C 12-05409 WHA

**ORDER DENYING MOTION TO COMPEL ARBITRATION RE MICHELLE LOU**

## INTRODUCTION

In this FLSA and California labor action arising from plaintiff's employment, defendants move to compel arbitration and to dismiss, or in the alternative, to stay the proceedings. For the reasons below, and after an evidentiary hearing, defendants' motion is **DENIED**.

## STATEMENT

It will take several paragraphs below to lay out the facts. The essence is that the employer had its employee sign contracts on multiple occasions agreeing to resolve their disputes, if any, in court in a specified venue — with no mention of arbitration — but on the day she was fired, the employer reversed field and had plaintiff sign a "termination certification" that included a paragraph requiring arbitration rather than court litigation to resolve any disputes. As usual, the devil is in the details, so here they are.

Plaintiff Michelle Lou was employed at defendant Ma Laboratories, Inc. During her employment she signed several employment contracts. Shortly after she was hired in July 2006, plaintiff signed an eight-page employment agreement (Dkt. No. 31-12). The contract contained a venue provision providing that (*id.* at ¶ L):

> [T]he jurisdiction and venue for any legal action arising out of or in any way related to Employee's employment with the Company or the terms of this Agreement shall be in the appropriate federal or state court for the County in which the Company maintains its principal place of business.

Three months later, on October 23, 2006, plaintiff was asked to sign a twelve-page employment agreement and did so (Dkt. No. 31-13). Although there were a few new provisions, the essence of the right-to-sue-in-court paragraph continued in force. Among the several new provisions was a new paragraph in which plaintiff agreed to return company documents (*id.* at ¶ 5). At the end of this paragraph, plaintiff agreed to sign a one-page termination certification at the end of her employment (*ibid.*). An unsigned exemplar of the termination certification was appended to the agreement (*id.* at 12). The exemplar of the termination certification contained four sentences relating to company property, inventions, confidential information, and recruiting employees (*ibid.*). Significantly, it did *not* mention arbitration (*ibid.*). Instead, as before, a venue provision for litigation in court was included in the main contract (*id.* at ¶ 13(a)):

> *Governing Law; Consent to Personal Jurisdiction.*
> This Agreement will be governed by the laws of the State of California. It is agreed that the jurisdiction and venue for any legal action arising out or in any way related to my employment with the Company or the terms of this Agreement shall be in the appropriate federal or state court for the County in which the Company maintains its principal place of business and I hereby consent to the jurisdiction of such court to resolve any disputes existing between the Company and myself.

The October 23 agreement also provided that it was the entire agreement and specified the amendment process (*id*. at ¶ 13(b)):

> *Entire Agreement*. This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

2

A couple of months later on December 21, 2006, plaintiff signed another employment agreement (Dkt. No. 31-14). This agreement was almost identical to the October 23 agreement except for a change to a paragraph on purchase orders, a deletion of an exhibit regarding at-will employment, and an addition of a two-page exhibit on conflicts of interest (*id.* at 6, 13–15). It too appended an exemplar termination certification that was identical to the one provided in the October 23 agreement and likewise did *not* mention arbitration.

Three years later, on December 4, 2009, late in the work day, plaintiff was told, without prior notice, that she was being terminated effective immediately and was handed a termination certification to sign (Dkt. No. 31-15). She did. The document resembled the one-page exemplar from the October 23 and December 21 agreements *except* two new provisions had been added, one of which was irrelevant and the other of which stated (*ibid.*):

> I hereby agree to binding arbitration of any dispute with the Company arising out of or relating in any way to my employment and its termination before the American Arbitration Association, San Jose, California and pursuant to its rules of procedure to the fullest extent allowable by law.

The parties dispute the circumstances surrounding plaintiff's signing of the certification. Plaintiff remembers that her termination occurred in a large room with other employees by Frank Wang of human resources, who told her she had to sign the termination certification (Dkt. No. 77-1 ¶ 7). Defendants contend that plaintiff was terminated by Alyssa Chiang of human resources in a private conference room, who told her "to please read though [the termination certification] and to take her time to ensure that she understood it before she signed it" (Dkt. No. 99 ¶¶ 5–8, 11–12).

To hear out this dispute, an evidentiary hearing was held on May 15 where plaintiff testified and so did Alyssa Chiang. Both were cross-examined as well. It is unnecessary to resolve all of the differences in recollection. The Court will assess the contractual obligations of both sides according to the reasonable expectations of both sides in the various circumstances. The specific findings will be incorporated below in the analysis.

In October 2012, Lou commenced the instant action alleging that defendants violated the federal FLSA, California labor laws, and California's Unfair Competition Law. In January 2013,

3

1  defendants moved to compel arbitration and to dismiss or to stay the proceedings (Dkt. No. 31).
2  This order responds only to the motion to compel Lou to arbitration. The parties have raised
3  whether other arbitration agreements signed by other employees of defendants are enforceable,
4  but this order limits its ruling to the arbitration agreement signed by Lou.

**JUDICIAL NOTICE**

6  The parties have made numerous requests for judicial notice (Dkt. Nos. 31, 72, 79, 87).
7  Because this order does not rely on any of the documents, all requests for judicial notice are
8  **DENIED**.

**ANALYSIS**

10   **1.   GOVERNING LAW.**

11  The parties do agree that the arbitration provision at issue is governed by the FAA.
12  Defendants contend that because the FAA governs, California unconscionability law as set forth
13  in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000), does
14  not apply (Reply 4). This is inaccurate. Our court of appeals still applies *Armendariz* to
15  determine if a California contract governed by the FAA is unconscionable. *See, e.g.*, *Kilgore v.*
16  *Keybank, Nat'l Ass'n*, Nos. 09-16703, 10-15934, 2013 WL 1458876, *3 (9th Cir. Apr. 11, 2013).
17  The arbitration paragraph did not choose a governing law, but plaintiff worked in California, the
18  employment agreements were signed here, and the agreements invoked California law as the
19  governing law. This order will apply California unconscionability law as set forth in *Armendariz*
20  to determine unconscionability vel non.

21   **2.   CONTRACT CONSIDERATION.**

22  Preliminarily, one might well ask what contract consideration was given in exchange for
23  the "agreement" by plaintiff to arbitrate, given that she signed only moments before she was
24  ushered out the door. At least in a different context, however, our court of appeals has held that
25  when an employer agrees to submit itself to the arbitration process for the employee's claims,
26  even if it is not required to arbitrate any of its own claims, adequate consideration exists.
27  *Circuit City Stores v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). For the reason stated below,

4

1  however, it is not necessary to reach this issue, for the arbitration provision fails as
2  unconscionable, as now explained.

### 3. UNCONSCIONABILITY.

Under California law, procedural and substantive unconscionability must both be present for an arbitration agreement to be unenforceable. *Armendariz*, 24 Cal. 4th at 114. To determine whether a contract term is unconscionable, we must apply a sliding scale: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Ibid*.

### A. Procedural Unsconscionability.

There are three reasons why the arbitration paragraph in question was procedurally oppressive and unconscionable.

*First*, it was presented on a take-it-or-leave-it basis. And, the impression was given to her by the employer that she would receive her termination check after (and only after) she had signed the certification. This was adhesion in spades. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010); *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *accord Gentry v. Superior Court*, 42 Cal. 4th 443, 469 (2007); *Vasquez v. Greene Motors, Inc.*, 214 Cal. App. 4th 1172, 1183 (2013).

*Second*, at the time she was fired, her various employment contracts expressly called for in-court litigation of her disputes, all as laid out above. When she was presented with a termination certification to sign, she had every right to expect that it conformed to the exemplar certification appended to the employment contracts, for her contract had specified the precise form of certification. Significantly, the exemplar had made no reference to arbitration and she had no reason to expect that the certification presented to her to sign at termination was anything other than what the company had promised to present. In the actual event, however, the termination certification presented to her deceptively resembled the exemplar certification required by the contract — *except for the addition of the arbitration paragraph*. The certification had the correct title. But it did not have the correct content. Nor did the employer draw to her attention that the document had been altered to slip in the arbitration

5

1 paragraph. Instead, the event was conducted without any mention of a drastic change in
2 contract terms and without any mention that the certification was different from the certification
3 required by the employment contract. The employer did not walk her paragraph-by-paragraph
4 through the certification, much less draw her attention to the new provision. This was deceptive
5 and oppressive. If the employer was going to try to amend the contract in this way, it was
6 incumbent on the employer to draw to the employee's attention that the document was *not* the
7 earlier agreed-on certification, that it would add an arbitration paragraph, and that the earlier
8 agreed-on right to litigate in court would be destroyed. This duty was particularly so due to
9 the surprise termination, meaning that she had just been told that she was being fired effective
10 immediately. In those upsetting circumstances, she could not be expected to process all
11 information and documents in a cool and detached manner, all the more so since the impression
12 was left with her that she would receive her last check only after she signed the certification.

13     *Third*, the arbitration rules of the American Arbitration Association, San Jose, California,
14 were not provided to the employee at any time, much less at the time of signing. Under the
15 California law on procedural unconscionability, this was unfair and procedurally
16 unconscionable. *See, e.g.*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010); *Sparks v.*
17 *Vista del Mar Child and Family Servs.*, 207 Cal. App. 4th 1511, 1523 (2012); *Zullo v. Superior*
18 *Court*, 197 Cal. App. 4th 477, 486 (2011). Here, the circumstances made the omission
19 particularly oppressive. The employee was not in a position to go home, do homework, and
20 track down the rules on her own. Instead, she was being ushered out the door, and promptly so.
21 She was led to believe that she had to sign then and there. Had the arbitration rules been
22 provided, moreover, they would have alerted her to the deception afoot and caused her to
23 reasonably inquire as to why arbitration was being substituted for in-court litigation.

24         **B.    SUBSTANTIVE UNCONSCIONABILITY.**

25     Lack of mutuality is one form of substantive unconscionability. *Armendariz*, 24 Cal. 4th
26 at 114, 117–18. Here, the earlier-signed contracts had given both the company and the employee
27 the right to sue the other *in court* (albeit in a specified venue). That right could be waived or
28 modified only by the party to be charged. The company never signed any modification and

6

never agreed to arbitrate its claims against anyone or anyone's claims against it. The company remained free to sue its employees in court, for example, to seek injunctive relief to recover property or trade secrets. That right had been conferred in the earlier employment contracts. Nothing in the termination certification charged that right and, indeed, the employer did not sign the termination certification, much less any other writing modifying its right to sue under the employment agreement. Mutuality was lacking.

*          *          *

On the sliding scale, this case is beyond the pale. The procedural unfairness was severe and the substantive one-sidedness was heavy-handed. The provision is unenforceable. Can it be severed? No, the offending provision would require addition of further provisions to make it mutual. And to do so would contradict the contractual right to go to court for an injunction, to take only one example. To insert mutuality would, therefore, redraw the rights of the parties. And, adding new terms is not severance. It is re-drafting. Finally, as a policy matter, to allow such re-drafting would encourage stronger parties to shoot for the moon and then, when caught, negotiate with the court down to something that should have been in there all along. This tactic would allow the offending party to reap the benefit of its one-sided contract of adhesion with many others until, if ever, someone takes them to court. Severance will not be indulged here.

## CONCLUSION

The motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 15, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7