IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHELLE LOU, individually and on behalf
of all others similarly situated,

    Plaintiff,

v.

MA LABORATORIES, INC., ABRAHAM
MA, CHRISTINE RAO, and CHRISTY YEE,

    Defendants.

No. C 12-05409 WHA

**ORDER DENYING MOTION TO COMPEL ARBITRATION RE XUEOU FENG**

## INTRODUCTION

In this FLSA and California labor action arising from plaintiff's employment, defendants move to compel arbitration and to dismiss, or in the alternative, to stay the proceedings. For the reasons below, defendants' motion is **DENIED**.

## STATEMENT

Plaintiff Xueou "Cher" Feng was employed as an account manager at defendant Ma Laboratories, Inc., from March 2010 until January 2013. During her employment she was asked to sign (and did) two employment agreements.

In particular, at the beginning of her employment as an account manager in March 2010, Feng signed a fourteen-page Employment, Confidential Information, and Invention Assignment Agreement (Dkt. No. 77-1 Exh. A). This Agreement contained a venue provision providing for in-court litigation (*id.* at ¶ 14(a)). Several months later in August 2010, Feng signed a

nine-page Supplement to Employment Agreement and General Release (Dkt. No. 69-2 Exh. A). The Supplement changed Feng's employment status to non-exempt, adopted new overtime policies, waived labor claims, and included a three-page mandatory mediation and arbitration agreement (*id.* at 4–12). The venue provision provided for state court for any non-arbitrable claim (*id.* at 6). Feng resigned in 2013.

The parties dispute the factual circumstances of Feng's signing of the employment agreements. Plaintiffs contend that Feng was pressured to sign the agreement by her supervisors and that she had to sign the agreement in order to keep her job (Dkt. No. 77-2). Defendants contend that there was no pressure to sign the agreements, that no employee was terminated for failing to sign the agreements, and that informational meetings were held regarding the agreements (Dkt. Nos. 89, 90). This order need not make any factual findings as to the circumstances of the signing of the agreements and assumes arguendo defendants' version of the facts for the purposes of this order.

In October 2012, plaintiff Michelle Lou commenced the instant action alleging that defendants violated the federal Fair Labor Standards Act, California labor laws, and California's Unfair Competition Law. On February 19, 2013, plaintiff filed a consent to join form signed by Feng, which made Feng a party to the FLSA claim (Dkt. No. 41).

This order responds to the motion to compel Feng to arbitration. The parties dispute whether other employees of defendants who signed arbitration clauses may be compelled to arbitrate, but this order limits its ruling to the arbitration agreement signed by Feng.

**JUDICIAL NOTICE**

The parties have made numerous requests for judicial notice (Dkt. Nos. 31, 72, 79, 87). Defendants request that the Court take judicial notice of JAMS Comprehensive Arbitration Rules and Procedures effective October 2010 (Dkt. No. 72). Pursuant to Federal Rule of Evidence 201(b), defendants' request is **GRANTED**. This order also takes judicial notice of the JAMS Employment Arbitration Rules and Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness pursuant to Rule 201(b). In so doing this order does

2

*not* find that said rules were readily available to Feng. Because this order does not rely on any of the other documents, all other requests for judicial notice are **DENIED**.

## ANALYSIS

### 1. GOVERNING LAW.

Arbitration agreements in the employment context are governed by the Federal Arbitration Act. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001). The parties do not dispute that the arbitration agreements at issue are governed by the FAA, but defendants contend that California unconscionability law set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000), does not apply because the FAA governs (Reply 10). This order disagrees. *Armendariz* applies to determine if a California contract governed by the FAA is unconscionable. *See, e.g.*, *Kilgore v. Keybank, Nat'l Ass'n*, Nos. 09-16703, 10-15934, 2013 WL 1458876, *3 (9th Cir. Apr. 11, 2013). The arbitration agreement did not choose a governing law, but plaintiff worked in California, both agreements were signed here, the agreements discuss California law, and plaintiffs bring California state-law claims. This order will apply California unconscionability law as set forth in *Armendariz* to determine unconscionability vel non.

### 2. UNCONSCIONABILITY.

Under California law, procedural and substantive unconscionability must both be present for an arbitration agreement to be unenforceable. *Armendariz*, 24 Cal. 4th at 114. To determine whether an arbitration agreement is unconscionable, courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Ibid.*

#### A. Procedural Unconscionability.

Procedural unconscionability refers to oppression or surprise. Plaintiffs assert that the agreement was procedurally unconscionable, and this order agrees.

##### (1) Contract of Adhesion.

Contracts of adhesion are at least somewhat procedurally unconscionable under California law. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004

(9th Cir. 2010); *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *accord Gentry v. Superior Court*, 42 Cal. 4th 443, 469 (2007); *Vasquez v. Greene Motors, Inc.*, 214 Cal. App. 4th 1172, 1183 (2013). Even where reasonable alternatives exist, adhesion contracts are procedurally unconscionable, but the degree of unconscionability is minimal. *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1470–71 & n.2 (2009). "Under California law, [a] contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 983 (9th Cir. 2007) (quotations omitted).

Ma Laboratories' arbitration agreement was adhesive. It was take-it-or-leave-it standardized employment form (Reply 11). Assuming without deciding defendants' dubious contention that plaintiff did not have to sign the agreement is true, defendants still have not shown that the standardized form was *negotiable*. Defendants assert in a heading that the agreement was negotiable (Reply 14). The only possible support is that informational meetings about the agreement were held (*ibid.*). Defendants do not contend that Feng even attended an informational meeting. Even if she had attended, informational meetings do not suggest that the agreement's terms were negotiable. This order finds that Ma Laboratories' standardized arbitration agreement was adhesive and that the arbitration agreement was at least somewhat procedurally unconscionable.

### *(2) Failure to Attach or to Provide the Rules.*

The failure to provide the rules governing the arbitration was also procedurally unconscionable. *See, e.g.*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010); *Sparks v. Vista del Mar Child and Family Servs.*, 207 Cal. App. 4th 1511, 1523 (2012); *Zullo v. Superior Court*, 197 Cal. App. 4th 477, 486 (2011). Defendants contend that failing to provide the rules is not unconscionable in employment agreements, but California authority contradicts this proposition. *See, e.g.*, *Sparks*, 207 Cal. App. 4th at 1523; *Zullo*, 197 Cal. App. 4th at 486. Defendants proffer one contrary decision that found a general reference to AAA rules was not procedurally unconscionable, *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 932–33 (N.D. Cal. 2012) (Judge Yvonne Rogers). *Ulbrich* stated that the arbitration rules were incorporated

4

by reference and to contend otherwise would treat arbitration contracts differently than other contracts and contradict Supreme Court authority in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011). *Concepcion* did not reach this issue and with supporting authority from California and our court of appeals, defendants' sole authority is unpersuasive.

Ma Laboratories' standardized form stated that "[t]he arbitration shall be administered either [sic] by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures" (Dkt. No. 69-2 Exh. A. at 9). This sentence is most problematic. *First*, it includes a grammatical error — the word "either" injected confusion. A lawyer or judge can look at it several times and then see that the word was likely an artifact from a prior draft and that the earlier draft probably referred to an alternative forum and that the word got left in even though the alternative forum was deleted. But the employees were not lawyers or sophisticated. For many, English was their second language. Were they supposed to figure out what "either" meant? To them the sentence would have been confusing. *Second*, how was the employee supposed to know what "JAMS" was? Again, lawyers and judges in California know what JAMS is but the employees in question would not. The contract nowhere clarified what JAMS was. *Third*, the arbitration rules referenced in the sentence were not provided to the employee, so it would have been unreasonable to expect that the employee understood to what she was obligating herself. The contract did not append the rules, and they were not otherwise provided by the employer.

In point of fact, those rules, now that they have been uncovered and examined in litigation, altered the employment agreement's allocation of costs. The employment agreement provided that the "[e]mployer shall advance and shall pay for all fees and costs of mandatory arbitration" but that the "arbitrator may, in the Arbitration Award, allocate all or part of the fees, costs and expenses of the prevailing party" (Dkt. No. 69-2 Exh. A at 9). The JAMS Comprehensive Arbitration Rules provided that "[e]ach Party shall pay its *pro rata* share of JAMS fees and expenses" and if "one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration" (Dkt. No. 72-20). In other words, the agreement purported to provide that the employer shall advance all fees,

5

but the JAMS rules provided that both parties shall pay the fees pro rata. Moreover, the agreement did not specify whether its procedures superseded that of JAMS. Because the rules conflicted with the agreement, the employee could not have understood what liabilities she would have been incurring (even if all the documents had been laid before her).

Moreover, the employment agreement required the use of the JAMS Comprehensive Rules. JAMS would have normally used a separate and different set of rules for *employment* disputes — JAMS Employment Arbitration Rules & Procedures. The JAMS Employment Rules (and the incorporated JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness) would have provided extra protection to employees including protection from payment of fees for arbitration, making hearings more accessible to employees, requiring more initial disclosures, and providing for more depositions. *Significantly, those more employee-protective rules were tossed out the window. In their place, Ma Laboratories insisted on the JAMS Comprehensive Rules.* This subjected the employee to the same regime imposed in commercial disputes between mega-companies, including the fee-shifting there indulged.

Accordingly, the failure to attach or provide the relevant rules rendered the arbitration agreement procedurally unconscionable.

### B. Substantive Unconscionability.

Substantive unconscionability concerns how one-sided the bargain is. *Armendariz*, 24 Cal. 4th at 114. An arbitration agreement that lacks mutuality without a reasonable justification is sufficient to find substantive unconscionability. *Id.* at 117–18.

#### (1) Lack of Mutuality.

Lack of mutuality can arise when the agreement did not provide that employers must bring their claims for injunctive relief to arbitration. *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176–77 (2002); *accord Compton v. Superior Court*, No. B236669, 2013 WL 1120619, *8 (Cal. Ct. App. Mar. 19, 2013). In *Mercuro*, the arbitration agreement excluded "claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information." 96 Cal. App. 4th at 176. *Mercuro* found that the agreement excepted from arbitration those

6

1  claims that employers would most likely bring against employees, which was substantively
2  unconscionable. *Id.* at 179.

3  Here, the agreement explicitly excluded the employer's claims for injunctive relief
4  (Dkt. No. 69-2 Exh. A at 7). Ma Laboratories' arbitration agreement lacked mutuality because
5  defendants could seek injunctive relief, but employees such as plaintiffs could not. Defendants
6  contend that carving out injunctive relief was permissible because arbitrators generally cannot
7  issue injunctions (Reply 17). Defendants further note that an employee may seek injunctive
8  relief against an employer (*ibid.*). These assertions are inapposite because Ma Laboratories'
9  agreement clearly stated that arbitration was required "save and except for *Employer* claims
10 giving rise to equitable and injunctive relief *against* Employee" (Dkt. No. 69-2 Exh. A at 7)
11 (emphasis added). In other words, Feng must submit to arbitration all of her claims, whether the
12 claims pray for damages or for an injunction, but defendants need not submit their claims that
13 request injunctive relief to arbitration. Defendants offer no reason for this lack of mutuality.
14 Moreover, this concern is not theoretical because plaintiffs' complaint requested injunctive relief
15 (Compl. at 25). For the same reasons as *Mercuro*, the lack of mutuality regarding injunctive
16 relief alone rendered the agreement substantively unconscionable.

### *(2)   Fee-Shifting Provision.*

18 Ma Laboratories' agreement was also substantively unconscionable because the
19 agreement provided for fee-shifting. A fee-shifting provision is "not per se substantively
20 unconscionable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006). But a
21 fee-shifting provision may be unenforceable as contrary to public policy if it "impedes the
22 vindication" of unwaivable statutory rights. *Ibid*. For an agreement to arbitrate statutory rights
23 to be enforceable, the agreement must meet "certain minimum requirements," including limits on
24 the costs of arbitration. *Armendariz*, 24 Cal. 4th at 91. "Without clearly articulated guidelines"
25 on when fee-shifting is permitted, fee-shifting "would create a sense of risk and uncertainty
26 among employees that could discourage the arbitration of meritorious claims." *Id.* at 111.

27 Ma Laboratories' arbitration agreement provided that:

28  Employer shall advance and shall pay for all fees and costs of
    mandatory arbitration (including any mediation require [sic] prior

7

> to such mandatory arbitration). The arbitrator may . . . allocate all or part of the fees, costs and expenses of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party otherwise awardable, if any, including the value of the legal services rendered by General Counsel to the extent permitted by law and public policy . . .

(Dkt. No. 69-2 Exh. A at 9). The arbitration agreement did not articulate when fee-shifting was appropriate and could apply whenever the employer prevails, even if the employee's claim was plausible and not frivolous. According to the JAMS Comprehensive Rules that Ma Laboratories chose to govern the arbitration, the parties pay a pro rata share of the JAMS fees, and if "one Party has paid more than its share of such fees, . . . the Arbitrator may award against any other Party any such fees . . . that such Party owes . . . ." Accordingly, the governing rules presumed that the employee will pay a portion of the fees and provided a method, which Ma Laboratories' agreement did not contradict, to shift those fees onto the employee.

Moreover, fee-shifting could apply to the mandatory *mediation*, multiplying the burden and risk. This would pose an even heavier Sword of Damocles over the employee, who would have to fear that after *both* mandatory proceedings she might have to pay for both. This prospect posed too great an in-terrorem effect. Worse, the clause, "to the extent permitted by law and public policy" did not save the agreement, but exacerbated the problem. That clause was not a clearly articulated guideline that would inform the employee of the extent of her responsibility to pay fees. The fee-shifting aspect of the arbitration agreement was substantively unconscionable. *Assaad v. Am. Nat'l Ins. Co.*, No. C 10-03712-WHA, 2010 WL 5416841, *6 (N.D. Cal. Dec. 23, 2010).

Plaintiffs also contend that the mandatory mediation provision, venue provision, unknown consideration, case-splitting, and the waivers of labor claims rendered the agreement unenforceable. Because the fee-shifting and lack of mutuality terms are sufficient to render the agreement substantively unconscionable, this order does not reach those issues.

### C. Sliding Scale.

Ma Laboratories' agreement to arbitrate was significantly substantively unconscionable because several terms were unconscionable. Even with the moderate procedural

8

unconscionability from the adhesive nature of the contract and the failure to attach the rules governing arbitration, at least part of the arbitration agreement was unconscionable.

### D. Severability.

Under California law, multiple unconscionable provisions suggest that the overall intention of the arbitration agreement was to force employees into unfair arbitration, and it is not abuse of discretion to refuse to enforce the agreement. *Armendariz*, 24 Cal. 4th at 124–25. Courts also must determine whether the unconscionable provisions can be severed without requiring courts to add provisions to save the agreement. *Ibid.* Severing bad arbitration clauses allows employers and other drafters to draft one-sided agreements and then negotiate down to the least-offensive agreement if faced with litigation; rather, employers should draft fair agreements initially. *Assaad*, 2010 WL 5416841, at *10; *Armendariz*, 24 Cal. 4th at 124 n.13.

Multiple aspects of the arbitration agreement — its fee-shifting and its lack of mutuality — were unconscionable. Curing the problematic provisions would require redrafting the arbitration agreement. This is especially true of the fee-shifting provision, which needs clearly articulated guidelines to comply with California law. Thus, the arbitration agreement is unenforceable.

## CONCLUSION

Defendants' motion to compel arbitration as to plaintiff Feng is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 17, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9