IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LOU, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>MA LABORATORIES, INC., ABRAHAM MA, CHRISTINE RAO, and CHRISTY YEE,<br><br>    Defendants.<br>                                      / | No. C 12-05409 WHA<br><br>**ORDER DISMISSING COUNTERCLAIMS, GRANTING LEAVE TO FILE A FIRST AMENDED COMPLAINT, MODIFYING SCHEDULING ORDER, DENYING RECONSIDERATION, AND VACATING HEARING** |

## INTRODUCTION

In this FLSA and California labor action, a flurry of motions has been filed. Plaintiff moves: (1) to dismiss defendants' counterclaims pursuant to Rule 12, (2) to strike defendants' counterclaims under California's anti-SLAPP law, (3) to strike defendants' affirmative defenses, (4) to file documents under seal, (5) for leave to file a first amended complaint, and (6) to amend the scheduling order. Defendants move for leave to file a motion for reconsideration and for leave to file a second amended answer.

For the reasons stated below, plaintiff's motion to dismiss defendants' counterclaims is **GRANTED**, but the anti-SLAPP motion to strike is **DENIED**. Defendants' motion for leave to file a motion for reconsideration is **DENIED**. Plaintiff's motion to seal is **DENIED** as moot. Plaintiff's motion for leave to file a first amended complaint is **GRANTED**; the motions to strike affirmative defenses and for leave to file a second amended answer are therefore **MOOT**.

Plaintiff's motion to amend the scheduling order is **GRANTED IN PART** and **DENIED IN PART**. The August 15 hearing on these motions is **VACATED**.

**STATEMENT**

Plaintiff Michelle Lou worked as a sales representative at Ma Laboratories, Inc., a California-based distributor of computer systems and components. Defendants are Ma Labs and three of its employees.

In December 2009, plaintiff Lou was told that she was being terminated, effective immediately. She subsequently filed a proposed collective and class action on behalf of similarly salaried Ma Labs salespeople, alleging wage-and-hour violations under the FLSA and the California Labor Code. The thrust of the complaint is that defendants engaged in a systematic, company-wide practice to deny overtime compensation and other wage-and-hour protections to employees who were allegedly entitled to them (Compl. ¶ 6).

After a May 15 order denied defendants' motion to compel arbitration, defendants filed counterclaims (mislabeled as a "cross-complaint") for breach of contract and conversion against plaintiff Lou. Xueou "Cher" Feng, a second plaintiff in this action, was not named in the counterclaims. Plaintiff Lou now moves to dismiss the counterclaims pursuant to Rule 12(b)(1) and Rule 12(b)(6), and moves to strike the counterclaims pursuant to California's anti-SLAPP law. Plaintiff Lou also moves to seal documents that defendants claim are confidential. Defendants request leave to file a motion for reconsideration of a previous order denying a motion to seal.

In a separate motion, plaintiff Lou seeks leave to file a first amended complaint and to strike affirmative defenses in defendants' amended answer. In response, defendants move for leave to file a second amended answer.

**ANALYSIS**

**1.   DEFENDANTS' COUNTERCLAIMS.**

The following facts are relevant to the motion to dismiss and the motion to strike defendants' counterclaims. Shortly after starting work at Ma Labs, plaintiff Lou allegedly signed a confidentiality agreement in which she agreed, *inter alia*, not to disclose or remove

from the company premises any confidential or proprietary information (Counterclaim. ¶ 7). Several subsequent iterations of Ma Labs' confidentiality agreement contained similar provisions. Plaintiff Lou also signed for receipt of an employee handbook containing the company's confidentiality and nondisclosure policies (*id.* at ¶¶ 12–14).

The counterclaim alleges that plaintiff Lou took and retained confidential information and documents that belonged to Ma Labs (*id.* at ¶¶ 18, 23). What information or documents were allegedly misappropriated is not explicitly alleged; the counterclaim only asserts that "[s]uch property includes, but is not limited to customer files, customer lists, customer pricing, vendor data file and other proprietary information." No further details are given as to the nature of the purportedly confidential information (*id.* at ¶ 27).

**A.   Plaintiff's Motion to Dismiss Pursuant to Rule 12(b)(1).**

Plaintiff Lou contends that subject-matter jurisdiction over defendants' counterclaims is lacking. This order agrees.

*(1)   Legal Standard.*

Federal district courts have original jurisdiction over all civil actions either "arising under the Constitution, laws, or treaties of the United States" or where complete diversity of citizenship exists and the matter in controversy exceeds $75,000. 28 U.S.C. 1331, 1332. While original jurisdiction is clear as to the FLSA claim (because it was created by federal law), the jurisdictional basis for defendants' counterclaims is debatable. Because both the breach-of-contract and conversion counterclaims arise under state law and the parties are not diverse, the only basis for jurisdiction is the supplemental jurisdiction statute, 28 U.S.C. 1367. Prior to the 1990 enactment of Section 1367, federal courts did not have jurisdiction over permissive counterclaims absent an independent basis for federal subject-matter jurisdiction. *Campos v. W. Dental Servs., Inc.*, 404 F. Supp. 2d 1164, 1167 (N.D. Cal. 2005) (Judge Ronald Whyte) (citing *Channell v. Citicorp Nat'l Servs. Inc.*, 89 F.3d 379, 384 (7th Cir. 1996)). Since 1990, Section 1367(a) has given federal courts discretion to exercise supplemental jurisdiction over state law counterclaims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."

3

Rule 13 defines two types of counterclaims: (1) compulsory counterclaims, which "arise out of the transaction or occurrence that is the subject matter of the opposing party's claim," and (2) permissive counterclaims, which are any counterclaims that are not compulsory. While some circuits have suggested that the distinction between compulsory and permissive counterclaims is rendered irrelevant when considering supplemental jurisdiction under Section 1367(a), this order will discuss each in turn, given the absence (as yet) of clear guidance from our court of appeals.

### *(2)   Compulsory Counterclaims.*

Our court of appeals applies the liberal "logical relationship test" to determine whether a counterclaim is compulsory, analyzing "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Amer.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (quotations and citations omitted). A logical relationship between claims exists when "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the [initial] claim rests activates additional legal rights otherwise dormant in the defendant." *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001) (quoting *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992)).

Applying the logical relationship test, defendants' breach-of-contract and conversion counterclaims plainly do not rest on the same operative facts as plaintiff Lou's wage-and-hour claim. Defendants argue that the common transaction is plaintiff Lou's employment at Ma Labs, but this strand is too tenuous, even under the liberal standard applied by our court of appeals. While the essential facts underlying the complaint concern a company-wide strategy to deny overtime compensation and other labor protections, the state law counterclaims allege employee misconduct. The allegations that plaintiff Lou breached a confidentiality agreement by retaining unspecified documents or converting Ma Labs' property are wholly irrelevant to the question of whether the company's employment practices violate the FLSA. By not providing any indication that the documents bear any relationship to the company's overtime policies, the counterclaims cannot be said to be logically related to plaintiff Lou's original claim. Defendants' counterclaims are therefore not compulsory.

4

*(3)* *Permissive Counterclaims.*

Federal courts may still exercise supplemental jurisdiction over some permissive counterclaims if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. 1367(a). Our court of appeals has explained that "[n]onfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 855 (9th Cir. 2004) (citations omitted).

Although the standard for supplemental jurisdiction is broader than the standard for compulsory counterclaims, this order finds that defendants' counterclaims do not form part of the same case or controversy as plaintiff Lou's FLSA claim. The dearth of detail as to the nature of the documents makes it impossible to establish that the counterclaims form part of the same case or controversy as the FLSA claim. The common nucleus of operative fact is absent — there is not even a loose factual connection between the allegation that Ma Labs did not fully compensate its workers for their labor and the assertion that plaintiff Lou took unspecified proprietary information in violation of the company's confidentiality agreement. The mere fact that the parties were once linked by an employer-employee relationship is insufficient when the claims would stir such different issues and rely on such divergent facts and evidence.

One further word is in order. From experience, the assigned judge is aware that in proposed class actions, defense counsel are fond of asserting counterclaims for the principal purpose of tarnishing the plaintiff in his or her role as the class representative, the argument being that the class should not be saddled with a representative encumbered with individual counterclaims. This tactic must be kept in mind. If it were specifically alleged in the counterclaim that the alleged misconduct was particular to the class proceeding itself, there would be a stronger nexus between the counterclaim and the class allegations. Possibly such a counterclaim would have been allowed. Here, however, there is no such allegation, and all we

5

have is a generic allegation that the proposed representative in some vague way unrelated to the class proceedings left the premises with company documents.  (Ma Labs will *not* be given a second bite at this apple and may not bring a second motion to bring counterclaims.)

Defendants' counterclaims are **DISMISSED**.  Since this order finds no jurisdictional basis to hear defendants' counterclaims, the motion to dismiss pursuant to Rule 12(b)(6) is **MOOT**.

### B. Plaintiff's Anti-SLAPP Motion to Strike.

Plaintiff Lou also moves to strike the counterclaims pursuant to California's anti-SLAPP statute.  Although the counterclaims have been dismissed, the anti-SLAPP motion also seeks attorney's fees and so must be addressed.  Because the record is currently so sparse, the motion to strike is premature.

A "strategic lawsuit against public participation" — otherwise known as a "SLAPP suit" — is a "meritless suit filed primarily to chill the defendant's exercise of First Amendment rights."  *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 54 Cal. Rptr. 2d 830, 834 (Cal. Ct. App. 1996).  Section 425.16(b)(1) of the anti-SLAPP statute allows for a motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  It also allows for an award of attorney's fees to the prevailing party.

Analyzing the complexities of an anti-SLAPP motion requires a more complete record than is available.  It is impossible to determine the intent behind defendants' counterclaims when the specific content of the documents or information that plaintiff Lou allegedly took and retained is unknown.  The motion to strike is therefore **DENIED**.

### C. Defendants' Motion for Leave to File a Motion for Reconsideration.

Defendants wish to move for reconsideration of the June 21 order denying plaintiff Lou's motion to seal.  They argue the order was improperly issued.  This order disagrees.

The procedural history behind this motion is complex — as usual, the devil is in the details.  On June 11 plaintiff Lou filed via ECF a motion to seal documents submitted in support of her motion to dismiss the counterclaims (Dkt. No. 148).  She took this precautionary measure because defendants' counterclaims alleged that she had possession of confidential information.

6

Defendants had notice of this motion the moment it was filed via ECF. The accompanying declaration identified the documents as "Bates-stamped LOU 00001–3, 6–7, and 41–46, which were produced as part of Plaintiff's Initial Rule 26(a) Disclosures on January 31, 2013" (Valerian Decl. ¶ 4).

Pursuant to Local Rule 79-5(d), the burden then shifted to defendants to file — *within seven days* — a declaration establishing that the documents were sealable and a proposed sealing order. The deadline for those filings was June 18. An additional three-day window was afforded to defendants to make their filings, but when none were made the motion to seal was denied by the June 21 order. The order further stated, pursuant to Local Rule 79-5(d), that the documents would be made part of the public record (Dkt. No. 160).

The time to move for reconsideration, if at all, was at that point. Instead, at 10:43 p.m.. on a Friday evening, three days after the deadline had passed, defendants filed their purported "declaration" (the proposed order was conspicuously absent). This filing was an attempt to mislead the Court. Rather than submitting a valid declaration, defendants chose to file a document that was a "declaration" in name only . It was unsigned, undated, and contained no sworn assertion that it was based on personal knowledge of the documents in question. It was not narrowly tailored. It was, in essence, a brief. *See* Local Rule 7-5.

Three days later, on June 24, defendants finally filed a proposed order in an attempt to cover their tracks. This filing was six days late. Defendants still did not file an appropriate declaration. The clerk filed the documents on the public docket on July 25 (Dkt. No. 163). Defendants then filed an opposition to the motion to dismiss their counterclaims and dedicated an entire subsection to rehash the argument that the motion to seal should be granted (four days after the motion had been denied). A full week had passed since the initial deadline had expired and defendants had still not filed a plausible declaration. Meanwhile, the documents remained on the public record.

As a last ditch effort, defendants argue that they were entitled to an additional three business days to file the declaration and proposed order because the documents were served to them by mail, pursuant to Rule 6(d). Too little, too late. Defendants imply that the Court

7

jumped the gun in denying the motion to seal.  Not so.  *First*, defendants had ample notice as soon as the motion was filed on June 11.  The accompanying declaration identified the documents by Bates number and noted that they were produced as part of plaintiff Lou's initial Rule 26(a) disclosures, to which defendants certainly had access.  *Second*, the documents were served by mail rather than instantaneously by email or fax because defendants had refused to stipulate to electronic service.  Defendants' accusation that use of this method was intended to shorten the time defendants had to respond is therefore irrelevant at best, disingenuous at worst.  *Third*, defendants' proposed sealable order was not filed until ten days after they allegedly received the documents by mail.  Even assuming, *arguendo*, that defendants were entitled to the extra time that they seek, they failed to file a declaration (as opposed to a brief) as required by Local Rule 79-5, and the proposed order was impermissibly late.  Neither submission can overcome the "strong presumption of access to judicial records" that weighs against sealing documents.  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  And even if the "compelling reasons" standard in *Kamakana* were substituted for a lighter burden of "good cause," defendants' motion still fails for the foregoing reasons.

It is a mystery how defendants can attempt to attach confidential status to any of the documents filed so far, especially in light of counsel's utter failure to respond appropriately to the motion to seal.  As defendants note in their opposition to the motion to dismiss, "[i]t is essential for Ma Labs to be vigilant" about maintaining the protected status of allegedly confidential materials (Opp'n Br. at 21).  Defendants' inability to file a solitary declaration that complies with the local rules suggests a lackluster conviction that the contents of those documents were in fact confidential or proprietary.  The documents are now part of the public record.  Should defendants later reassert breach-of-contract and conversion counterclaims that rely on assertions that these particular documents contain confidential information, they will fail.  That ship has sailed.  Defendants' motion for leave to file a motion for reconsideration is **DENIED**.

8

### C. Plaintiff's Motion to Seal.

Plaintiff Lou filed a second motion to seal other documents concurrently with her reply in support of her motions to dismiss and to strike defendants' counterclaims (Dkt. No. 180). This order has already found that jurisdiction is lacking to hear defendants' counterclaims, and the documents that were the subject of this motion to seal were not necessary to make this finding. The motion to seal is therefore **DENIED** as moot. The documents will not be filed on the public docket.

### 2. PLAINTIFF'S COMPLAINT.

Plaintiff Lou argues that she should be permitted to file a first amended complaint and that the scheduling order should be modified. This order agrees.

### A. Plaintiff's Motion for Leave to File a First Amended Complaint.

Under Rule 15(a), "leave to amend shall be freely given." Discretion may be exercised to deny leave to amend due to "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party and futility of amendment." *Carvalho v. Equifax Info. Servs. LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citations and alterations omitted).

This order finds no reason to deny leave to amend, especially given defendants' repeated efforts to stonewall discovery. Defendants have now been admonished on four separate occasions, and Judge Cousins has granted two motions to compel discovery from defendants (Dkt. Nos. 35, 40, 50, 67). A May 7 order amended the scheduling order to remedy some of the delay in proceedings that resulted from this behavior. That order allowed plaintiff Lou to seek leave to add new parties or make pleading amendments by July 11, which she did by filing this timely motion to file a first amended complaint.

None of the factors commonly considered under Rule 15(a) suggests that plaintiff Lou's motion should be denied. This is her first attempt to amend the complaint. Plaintiff was given until July 11 to seek leave to amend, and plaintiff filed this timely motion on July 11. Defendants make no plausible argument that this motion was brought in bad faith or that amendment would be futile.

9

Plaintiff's motion for leave to file a first amended complaint is **GRANTED**. The motions to strike defendants' affirmative defenses and for leave to file a second amended answer (both filed before plaintiff Lou sought leave to file her amended complaint) are therefore **MOOT**. Defendants have **14 DAYS** to file an answer to the first amended complaint or to otherwise respond, and plaintiff Lou may then move to strike any affirmative defenses contained therein.

### B. Plaintiff's Motion to Modify the Scheduling Order.

"A schedule may be modified only for good cause and with the judge's consent." Rule 16(b)(4). Our court of appeals has explained that Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Plaintiff Lou requests a 90-day extension on all subsequent dates on the scheduling order. This order holds that plaintiff Lou has demonstrated diligence in prosecuting her case, in spite of defendants' repeated stonewalling, as discussed above. Plaintiff Lou also had to respond to defendants' ultimately unsuccessful counterclaims and unsuccessful motion to compel arbitration. The motion to modify the scheduling order, however, shoots for the stars in requesting a 90-day extension. Such a delay will not be necessary; 28 additional days to prepare her motion for class certification is sufficient. Corresponding extensions for subsequent dates will also be permitted.

Plaintiff's motion to modify the scheduling order is **GRANTED IN PART** and **DENIED IN PART**. The motion for class certification is now due by **OCTOBER 3, 2013**. Non-expert discovery cut-off and expert designation and disclosure of full expert reports is now set for **JANUARY 11, 2014**. Dispositive motions must be filed by **FEBRUARY 27, 2014**. The final pre-trial conference will be held on **APRIL 7, 2014**. A jury trial is set for **APRIL 21, 2014**.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to dismiss defendants' counterclaims is **GRANTED** but the anti-SLAPP motion to strike is **DENIED**. Defendants' motion for leave to file a motion for reconsideration is **DENIED**. Plaintiff's motion to seal is **DENIED** as moot. Plaintiff's motion for leave to file a first amended complaint is **GRANTED**; the motions to strike

10

affirmative defenses and for leave to file a second amended answer are therefore **MOOT**. Plaintiff's motion to modify the scheduling order is **GRANTED IN PART** and **DENIED IN PART**. The August 15 hearing on these motions is **VACATED**.

**IT IS SO ORDERED.**

Dated: August 2, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE