Exhibit A

REDACTED

**From:** Jerry Darsono [mailto:gojerr@yahoo.com]
**Sent:** Wednesday, May 01, 2013 11:15 AM
**To:** Xinying Valerian
**Cc:** Jerry Darsono; Christina Tay; Mark Musto MA Labs
**Subject:** [SPAM] Re: Inquiry re. Ma Labs
**Importance:** Low

Dear Xinying,

1

I do not want to participate in this matters and please remove my name

Thank you
Jerry Darsono

Sent from my iPhone

On May 1, 2013, at 1:51 PM, Xinying Valerian <XValerian@sanfordheisler.com> wrote:

Dear Jerry:
I am an employment rights attorney in San Francisco at the law firm Sanford Heisler, LLP. We represent account managers who worked in various offices of Ma Labs in a potential class action lawsuit concerning overtime pay and other related issues. This lawsuit is ongoing in federal court here in San Francisco. Two former account managers from Atlanta are participating so far (Jesuan and Betty). We received your contact information from Ma Labs, not from co-workers. The federal court ordered Ma Labs to produce contact information of employees so that we can investigate Ma Labs' practices. We would like to ask you questions about your experiences and the Atlanta office.

You have no obligation to talk to us. I am reaching out to you to see whether you would be willing to hear our questions and maybe chat with us, confidentially. If you are willing, we would really appreciate it.

All the best,

Xinying

Xinying Valerian
Associate | **Sanford Heisler, LLP**
555 Montgomery Street, Suite 1206
San Francisco, California 94111
xvalerian@sanfordheisler.com | www.sanfordheisler.com
main: 415 795 2020 | fax: 415 795 2021
**Please note that our email and website addresses have changed. Please update your records accordingly.**

*CONFIDENTIAL INFORMATION: Please be advised that this email and any files transmitted with it may be privileged or confidential and are intended solely for the individuals or entities to whom they are addressed. If you are not the intended recipient, please do not read, copy or retransmit this communication but destroy it immediately. Any unauthorized dissemination, distribution or copying of this communication is strictly prohibited. Thank you.*

E-Mail Removal List: Please complete the "Block Me" registration at http://www.malabs.com/blockme if you wish to unsubscribe from our promotional e-mail list. It may take 24 hours to process the request.

Terms & Conditions: The Terms and Conditions of Sale at http://www.malabs.com/terms-conditions apply to all Customer transactions.

Price Quotation: Unless otherwise indicated, all price quotes are based on a cash discount offered to all buyers for payment by cash or check as permitted by law.

Destination Control Statement: It is the policy of Ma Labs to strictly comply with all U.S. export control laws. Diversion contrary to U.S. law is strictly prohibited.

Confidential Information: This e-mail (or attachments) is strictly for use of the intended recipient. It may contain information of Sender that is privileged and confidential, proprietary, or subject to non-disclosure obligations. The recipient is not authorized to disclose any such information to any third party absent express written agreement. If you are not the intended recipient, you are hereby notified that any disclosure, copying, or distribution of this information is strictly prohibited. If you have received this e-mail in error, promptly notify Sender and destroy all copies of the transmission.

Exhibit B

REDACTED

**From:** Moe Mir [mailto:mohammed.mir@gmail.com]
**Sent:** Friday, April 19, 2013 7:07 AM
**To:** Moe Mir
**Subject:** Fwd: Lou v. Ma Laboratories Overtime Case

---------- Forwarded message ----------
From: "Moe Mir" <mohammed.mir@gmail.com>
Date: Apr 19, 2013 10:05 AM
Subject: Fwd: Lou v. Ma Laboratories Overtime Case
To: <steven.leung@malabs.com>
Cc:

---------- Forwarded message ----------
From: "Margaret Weihs" <MWeihs@sanfordheisler.com>
Date: Apr 18, 2013 10:06 PM
Subject: Lou v. Ma Laboratories Overtime Case
To: "mohammed.mir@gmail.com" <mohammed.mir@gmail.com>
Cc:

Janette Wipper

Xinying Valerian

Chaya Mandelbaum

SANFORD HEISLER, LLP

555 Montgomery Street Suite 1206

San Francisco, CA 94111

Tel: 415-795-2020

April 18, 2013

**VIA E-MAIL**

Mr. Mohammed Mir

5-J Parkwood Dr.

S. Amboy, NJ 08879

mohammed.mir@gmail.com

    **Re:**   Lou v. Ma Laboratories, Inc., et al., 3:12-cv-05409-WHA(NC)(N.D. Cal.)

Dear Mr. Mir,

Our law firm represents the Plaintiff – Michelle Lou – who filed a class action overtime lawsuit against Ma Laboratories, Inc. The Court ordered Ma Labs to provide your contact information to us because you may be part of a potential class that includes inside sales representatives who did not have anyone reporting to them, such as Account Managers.

The Plaintiff claims that all of Ma Labs' employees who fall within the potential class were unlawfully denied overtime pay and meal and rest breaks. You might be owed overtime wages for hours worked in excess of 8 hours in a day or 40 hours in a week. If you worked for Ma Labs in California, you might also be owed wages for missed meal and rest breaks. Ma Labs denies these claims.

We are at a very important stage of the case. The judge will decide soon whether the case should go forward as a class action. You are under no obligation to speak with us. However, if you are willing to spare a few minutes, we would very much like to hear from you regarding your job duties and how you were paid at Ma Labs. Various laws prohibit Ma Labs from retaliating against you for giving information to us.

If you would like to speak with us regarding your job duties and compensation at Ma Labs, please call our San Francisco Office at 415-795-2020 or email Margaret Weihs at mweihs@sanfordheisler.com, so we can arrange a time to talk.  We can speak to callers in Spanish and Chinese. Se habla español.我们会说国语。

Very truly yours,

Janette Wipper

Xinying Valerian

Chaya Mandelbaum

E-Mail Removal List: Please complete the "Block Me" registration at http://www.malabs.com/blockme if you wish to unsubscribe from our promotional e-mail list. It may take 24 hours to process the request.

Terms & Conditions: The Terms and Conditions of Sale at http://www.malabs.com/terms-conditions apply to all Customer transactions.

Price Quotation: Unless otherwise indicated, all price quotes are based on a cash discount offered to all buyers for payment by cash or check as permitted by law.

Destination Control Statement: It is the policy of Ma Labs to strictly comply with all U.S. export control laws. Diversion contrary to U.S. law is strictly prohibited.

Confidential Information: This e-mail (or attachments) is strictly for use of the intended recipient. It may contain information of Sender that is privileged and confidential, proprietary, or subject to non-disclosure obligations. The recipient is not authorized to disclose any such information to any third party absent express written agreement. If you are not the intended recipient, you are hereby notified that any disclosure, copying, or distribution of this information is strictly prohibited. If you have received this e-mail in error, promptly notify Sender and destroy all copies of the transmission.

Exhibit C

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2               FOR THE COUNTY OF SANTA CLARA

3

4     GUANG TIAN, YAN NIE, JING JIAN WU,

5     ZHEN SHENG YIN, TIE QUAN MA,

6     MING FANG TIE, JIAN EN LIN,

7     YUN YING LIN, YU HONG CHANG, YI WU,

8     On behalf of Themselves and All

9     Others Similarly Situated,

10              Plaintiffs,

11    v.                              No. 1-11-CV-195373

12    MA LABORATORIES, INC.,

13              Defendants.

14    _____/

15

16           INTERPRETED DEPOSITION OF YI WU

17    - - - - - - - - - - - - - - - - - - - - - - - - - - -

18           TUESDAY, DECEMBER 4, 2012

19           SAN FRANCISCO, CALIFORNIA

20

21

22

23    Reported by:

24    DEBBIE MAYER, CSR 9654, RPR CRR CRP CLR

25    File no. 56129

Page 2

1           BE IT REMEMBERED, pursuant to Defendant

2     Ma Laboratories, Inc.'s Notice of Taking Deposition,

3     that on Tuesday, December 4, 2012, 10:05 a.m. -

4     7:02 p.m., at the Law Offices of Littler Mendelson,

5     650 California Street, 20th Floor, San Francisco,

6     California, 94108, before me, Debbie Mayer, a Certified

7     Shorthand Reporter for the State of California, there

8     personally appeared:

9

10                          YI WU,

11

12    residing at 1056 North Abbott Avenue, Milpitas,

13    California, called as a witness by the Defendant, who,

14    being by me first duly sworn/affirmed, was thereupon

15    examined and testified as hereinafter set forth.

16

17

18

19

20

21

22

23

24

25    ///

1    Q.   Okay.  And when you were expecting UPS and

2  FedEx to come to pick up orders, then the Inventory

3  Department had to sometimes work harder to get the

4  orders ready to move to shipping, correct?

5    A.   That's right, because when we do the orders, we

6  are the first stage.

7    Q.   Is it possible that when Richard yelled the

8  statement about "We don't have breaks" that he was

9  referring to not taking breaks during the rush part of

10  the afternoon?

11        MS. WIPPER:  Objection, calls for speculation.

12    A.   No, we never have breaks.

13  BY MS. HIGHTOWER:

14    Q.   Did you ever hear Richard say that we don't

15  take breaks any time other than this one afternoon that

16  you've described?

17    A.   I'm not sure.  I don't know.

18    Q.   Did Shen Bin ask you to sign a document on her

19  behalf?

20        MS. WIPPER:  Objection, asked and answered.

21    A.   Sign what?  The testimony?

22  BY MS. HIGHTOWER:

23    Q.   The document you talked about before, the one

24  you signed before you went to China?

25    A.   Right.  Well, I did it willingly.

1    Q.   Did anyone -- strike that.

2        Did you meet with an attorney that you

3 understood was representing Shen Bin regarding this

4 document that you signed on her behalf?

5    A.   No.

6    Q.   Did anybody meet with you on behalf of Shen Bin

7 in order to prepare this document that you signed?

8    MS. WIPPER:   Objection, attorney work product.

9    A.   No.   I was only testifying to the truth, which

10 was that the company did not have these three items.

11    MS. HIGHTOWER:   Okay, I move to strike that as

12 nonresponsive.

13 BY MS. HIGHTOWER:

14    Q.   You signed a document on behalf of Shen Bin,

15 correct?

16    A.   Yes.

17    Q.   Did anyone ask you questions about your

18 experience at Ma Labs on behalf of Shen Bin?

19    MS. WIPPER:   Objection.   To the extent the

20 question calls for attorney work product, I'm

21 instructing her not to answer about any discussions with

22 counsel concerning the statement.

23    THE INTERPRETER:   Interpreter needs a

24 repetition.

25    MS. WIPPER:   Work product covers more than just

1    her lawyer.   I'm not saying attorney/client privilege,

2    I'm saying attorney work product.   The difference.

3    (Interpreter clarification.)

4    BY MS. HIGHTOWER:

5        Q.   The question is, did anyone ask you questions

6    about your experience at Ma Labs on behalf of Shen Bin?

7            MS. WIPPER:  Same objection to the extent the

8    question calls for any information protected by the

9    attorney work product.

10       A.   I still don't understand your question.   For

11   Shen Bin?

12   BY MS. HIGHTOWER:

13       Q.   You signed a document on behalf of Shen Bin.

14       A.   Yes.

15       Q.   Did you write that document yourself?

16           MS. WIPPER:  Same objection.

17       A.   I signed it.

18   BY MS. HIGHTOWER:

19       Q.   I know you signed it; who wrote it?

20           MS. WIPPER:  Same objection.

21       A.   I don't know.   But to fight for rights, I

22   signed it.

23   BY MS. HIGHTOWER:

24       Q.   You're still not answering my question.

25           Okay, was this document that you signed in

1   English, or Mandarin?

2          MS. WIPPER:  Same objection.

3      A.   English.  My son explained it to me.

4   BY MS. HIGHTOWER:

5      Q.   Did you keep a copy of the document you signed?

6      A.   No.

7      Q.   When your son explained this document to you,

8   was anyone else present?

9      A.   No.

10     Q.   Did your son write the document that you

11  signed?

12         MS. WIPPER:  Same objection.

13     A.   No.

14  BY MS. HIGHTOWER:

15     Q.   Who wrote the document that you signed?

16         MS. WIPPER:  Same objection, asked and

17  answered.

18     A.   I don't know exactly who wrote it, but it talks

19  about fighting for our rights, and I signed it.

20  BY MS. HIGHTOWER:

21     Q.   And when you say "fighting for your rights,"

22  you mean it talked about not getting meal breaks and

23  rest breaks?

24         MS. WIPPER:  Objection, mischaracterizes prior

25  testimony.  I'm instructing her not to answer to the

Page 92

1   extent any of the information is covered by attorney

2   work product.

3       MS. HIGHTOWER:  I think she's already waived

4   it.  She's already telling us what's in the declaration.

5   You're trying to provide half the information, not the

6   entire information.

7       MS. WIPPER:  You know what the subject matter

8   of the claim brought by Bin Shen was, so obviously it's

9   addressing the issues in that matter.  Just like -- just

10  like you asked about the questions about the topics

11  covered in her conversation with Marc Litton which you

12  were claiming was outside of attorney/client privilege,

13  which is -- and it wasn't the discussions, it wasn't the

14  communications, just like it's not the thought processes

15  of the attorney involved.

16      MS. VALERIAN:  If we're still on the record,

17  are these colloquies supposed to be translated?

18      MS. HIGHTOWER:  No.  No.  Let's move on.  I'm

19  going to debate this with you later.

20      MS. WIPPER:  That's fine.  We have case law on

21  it.

22      MR. LITTON:  Would you like to try and read it?

23      MS. WIPPER:  Sure.  There's a very recent case

24  right on point.

25      MS. HIGHTOWER:  I don't think this addresses

Page 93

1    it, but all right, let's move on.

2    BY MS. HIGHTOWER:

3        Q.   Before you signed this document that your son

4    translated to you, did someone ask you questions in

5    order to get the information to put into this document

6    that you signed?

7            MS. WIPPER:   Same objection, asked and

8    answered.

9        A.   I didn't do any preparation.   My son just

10   simply explained it to me, regarding fighting for our

11   rights about those two items.

12   BY MS. HIGHTOWER:

13       Q.   Did you have any discussion with anyone

14   regarding your experience at Ma Labs, that you

15   understood was in order to help Shen Bin with her claim

16   against Ma Labs, before you signed this document that

17   we're talking about?

18           MS. WIPPER:   Same objection.

19       A.   I signed this willingly when he yelled at --

20   yelled out, loudly.   A lot of people were there, and we

21   were all very upset.   Shen Bin left the company that day

22   because of this incident.   She was really upset.   She

23   had to go home to rest.

24   BY MS. HIGHTOWER:

25       Q.   Did she quit that day?

1      A.   No, not quit.  After our manager said something

2   like that, she was really angry.  She asked for leave

3   that day to go home.

4      Q.   The document that you signed on behalf of

5   Shen Bin was not written by you, and it was not written

6   by your son; how, to your understanding, was the content

7   of that document obtained?

8      A.   My son didn't write it.

9         MS. WIPPER:  Same objection.

10     A.   The document was given to me by Shen Bin.

11  BY MS. HIGHTOWER:

12     Q.   I see.  The first time you saw it was when

13  Shen Bin gave you the document; is that correct?

14        MS. WIPPER:  Objection, asked and answered.

15     A.   That's right.

16  BY MS. HIGHTOWER:

17     Q.   Did you make any changes?

18     A.   I don't remember if I did because I don't know

19  English.  The details and the contents, my son sort of

20  helped me translate it, to me.  I'm not sure if I had

21  made any changes.

22     Q.   So, just to be clear, you got the document from

23  Shen Bin.  You asked your son to translate it to you.

24  He read it to you in Mandarin.  And then you signed it?

25        MS. WIPPER:  Objection, mischaracterizes prior

1    testimony.

2        A.    Yes, I signed it, and my son had translated it

3    to me.

4    BY MS. HIGHTOWER:

5        Q.    But at no time in that process did you make any

6    changes, to the best of your recollection?

7              MS. WIPPER:   Objection, asked and answered.

8        A.    I already told you, I'm not sure if I made any

9    changes.

10   BY MS. HIGHTOWER:

11       Q.    Did you tell anyone at Ma Labs that you had

12   submitted this document to help Shen Bin?

13       A.    I didn't tell anybody.

14       Q.    Why not?

15       A.    I only was representing myself.  I wanted to

16   get my rights.  I don't know what the next step was.  I

17   was just telling the truth.

18       Q.    Did you tell anyone at that time that you were

19   not getting the breaks that you deserved?

20       A.    I don't know.  I don't know the law.  I don't

21   know English.  I don't know the U.S. laws regarding

22   these areas.

23       Q.    Did you ask anyone in the Human Resources

24   department at Ma Labs whether you were entitled to

25   breaks that you were not receiving?

1       A.   I didn't know about these things.  I didn't go

2  to them.

3       Q.   Well, you knew that your friend Shen Bin was

4  making a claim based on her not getting her breaks,

5  correct?

6       A.   After she told us, after the case came out,

7  then we all knew that we needed to have breaks.

8       Q.   When was that?

9       A.   From when I started at the company, nobody told

10 us there were these things.

11      Q.   You said, "After she told us, after the case

12 came out, we all knew we needed to have breaks."

13           When did Bin Shen tell you you needed to have

14 breaks?

15      A.   Not that she told us, but that after the case

16 came out.  It wasn't until we signed the agreement in

17 February 2010 that we knew that we were entitled to

18 these breaks.  But even after that, we still didn't get

19 them.

20           MS. WIPPER:  Okay, we've been going for more

21 than an hour, so we want to take a break.

22           MS. HIGHTOWER:  I'm just going to say that at

23 the rate this is going, we're probably not going to get

24 eight hours in today, so we're going to have to discuss

25 what we do about that.  So --

Page 97

1          MS. WIPPER:  Why is that?  We're prepared to go
2    eight hours.
3          MS. HIGHTOWER:  You're prepared to go eight
4    hours?
5          THE INTERPRETER:  Counsel, she says she wants
6    to use the bathroom.
7          MS. HIGHTOWER:  All right, let's take a short
8    break.
9    (Off the record at 15:15:49)
10   (Back on the record at 15:25:25)
11         MS. HIGHTOWER:  Ready?
12         THE REPORTER:  Yes.
13   BY MS. HIGHTOWER:
14     Q.   Ms. Wu, did someone tell you at some time
15   whether Shen Bin's case against Ma Labs had been
16   resolved?
17     A.   Nobody said that.  But I know that she was just
18   trying to fight for her rights.
19     Q.   Did you ever find out whether Ms. Shen received
20   any money as a result of her claim against Ma Labs?
21         MS. WIPPER:  Objection, asked and answered.
22     A.   I don't know.  I didn't ask.
23   BY MS. HIGHTOWER:
24     Q.   So at no point did anyone ever tell you whether
25   Shen Bin received any money or compensation from Ma Labs

1       CERTIFICATE OF REPORTER

2

3           I, DEBORAH MAYER, CSR No. 9654, Certified

4   Shorthand Reporter, attest:

5           That the foregoing proceedings were taken

6   before me at the time and place therein set forth, at

7   which time the witness was put under oath by me;

8           That the testimony of the witness, the

9   questions propounded, and all objections and statements

10  made at the time of the examination were recorded

11  stenographically by me and were thereafter transcribed;

12          That the foregoing is a true and correct

13  transcript of my shorthand notes so taken;

14          That I am not a relative or employee of any

15  attorney of the parties, nor am I financially interested

16  in this matter;

17          I declare, under the penalty of perjury of the

18  laws of the State of California, that the foregoing is

19  true and correct.

20

21  DATED:12/14/12

22

23                      _____

                        DEBORAH MAYER, RPR CRR CRP CLR

24                      C.S.R LICENSE NO. 9654

                        FOR THE STATE OF CALIFORNIA

25

Exhibit D

1  Thomas Marc Litton (CA Bar # 119985)
   Law Office of Thomas Marc Litton
2  555 Montgomery Street, Suite 820
   San Francisco, CA 94104
3  Telephone: (415) 421-4770
   Facsimile: (415) 421-4784
4
5  *Attorney for Claimant Bing Shen*
6
7
8              **LABOR COMMISSIONER, STATE OF CALIFORNIA**
9              **DEPARTMENT OF INDUSTRIAL RELATIONS**
10             **DIVISION OF LABOR STANDARDS ENFORCEMENT**
11
12  BING SHEN,
13                    CLAIMANT,          Case No. Case No. 12-77119  MQ
14       vs.                            **DECLARATION OF YI WU IN**
                                        **SUPPORT OF CLAIMANT'S**
15                                      **ACTION AGAINST MA**
16  MA LABORATORIES, INC.               **LABORATORIES, INC.**
17             RESPONDENT.              Hearing Date:   March 23, 2010
                                        Time:           9:30 am
18                                      Hearing Officer: Eugene Markowitz
                                        Location:       San Jose Office
19
20
21
22  I, Yi Wu, do hereby declare as follows:
23       1.  I make this declaration based upon my personal knowledge of the matters set forth
24       below and if called to do so, I can and will testify truthfully and competently about said
25  matters.
26       2.  I am a resident of the State of California and a current full time employee of Ma
27       Laboratories, Inc. I began my employment at MA Laboratories on or about November 21,
28

---

1   2005, as a "double check clerk" in the inventory department under the supervision of

2   Richard Chou.

3   3. Starting in November, 2005 and continuing to February 15, 2010, my break times and

4   lunch break times were routinely taken away from me at least once or twice a week by

5   Richard Chou. When those break times were taken away from me, I was required, by Mr.

6

7   Chou, to continue working on my normal duties in the inventory department. Also, I was not

8   given an alternative lunch break or any other break to make up for my lost breaks.

9   4. On or about February 15, 2010, I received a notice from MA Laboratories management

10   that a new policy was being put into place, requiring employees, like myself, to take

11

12   mandatory breaks, including lunch breaks. This was a major change. Prior to that new policy

13   being issued, Richard Chou, my supervisor, frequently instructed me and other employees,

14   like Bing Shen, to continue working for MA Laboratories without taking a break. If I had not

15   been so instructed, I would have taken all my breaks, including all my lunch breaks.

16

17   5. I became aware that last year Ms. Shen brought a Labor Board claim against MA

18   Laboratories based upon the fact that Mr. Chou required Ms. Shen and others to work during

19   their breaks. I have personally observed Bing Shen and others working during their breaks,

20   including lunch breaks, at Richard Chou's demand.

21

22   6. I would have appeared in person at the March 23, 2010 hearing on Bing Shen's case if it

23   were not for the fact that I had previously made plans to leave California on a month long

24   vacation starting on March 21, 2010. As a consequence, I regretfully cannot be present at the

25   hearing. Should the matter be continued to a date that I can attend I will certainly attend and

26   provide the aforementioned testimony.

27   I declare under penalty of perjury under the laws of the state of California that the

28

1   foregoing is true and correct and that this declaration was executed on March 16, 2010 in

2   Milpitas, California.

3

4

5

6                                         Yi Wu

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit E

Copy

# FILED

JUL 1 0 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara
BY  sson
DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| MA LABORATORIES, INC, | CASE NO.: 1-13-CV-244982 |
| PLAINTIFF, | |
| VS. | ORDER ON SUBMITTED MATTER |
| BING SHEN, | |
| DEFENDANT. | |

The Motion to Strike to the Complaint Pursuant to CCP 425.16 by Defendant Shen came on for hearing before the Honorable Mark H. Pierce on July 9, 2013 at 9:00 a.m. in Department 9. The court having considered the pleadings, argument of counsel and the matter having been submitted, the court orders as follows:

Ma Labs' request for judicial notice is GRANTED. (See Evid. Code, § 452, subds. (c) (d).)

Shen's special motion to strike Ma Labs' complaint pursuant to Code of Civil Procedure section 425.16 is GRANTED IN PART and DENIED IN PART.

Contrary to Shen's contention, the first, second and fourth causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and injunctive relief do not arise

1

1   out of protected activity. While Shen argues that all of Ma Labs' claims arise out of the initial

2   *petitioning activity* and the subsequent *settlement* of her claims, the first, second and fourth

3   causes of action actually arise out of *independent statements* that Shen made to third parties.

4   (See Complaint, ¶¶ 25, 33, 42-44.) An action for breach of a settlement agreement is not

5   necessarily based on protected activity in the underlying judicial proceeding in which it was

6   executed. (See *Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164

7   Cal.App.4th 1008, 1116-1117.) Instead, it must be shown that the defendant's activity giving

8   rise to his or liability is itself an act in furtherance of the right of petition or free speech. (*Id.*; see

9   also *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133

10  Cal.App.4th 568, 670-671.) Here, Shen's alleged disclosures that she had "won her case"

11  against Ma Labs, and of the approximate dollar amount of the settlement, were not made in

12  connection with the underlying DLSE proceeding. Accordingly, the first, second and fourth

13  causes of action do not fall within the purview of the anti-SLAPP statute.

14

15      However, the third cause of action for fraud does arise out of protected activity. While

16  Ma Labs argues that all of its claims arise out of the *breach* of the settlement and severance

17  Agreements, the third cause of action actually arises out of the *negotiation and execution* of the

18  agreements, i.e., Shen's alleged false promise. (See Complaint, ¶ 36.) Settlement negotiations

19  constitute statements or writings made in connection with an issue under consideration or review

20  by a judicial body, and are thus protected activities under Code of Civil Procedure section

21  425.16. (See *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963-964, citing *Navellier v. Sletten*

22  (2002) 29 Cal.4th 82, 90; *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 841-

23  842; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1418-1420.) Accordingly, the third

24  cause of action falls within the purview of the anti-SLAPP statute.

25

26      Given that the fraud cause of action arises out of protected activity, the burden shifts to

27  Ma Labs to demonstrate that this claim is "legally sufficient and supported by a sufficient prima

28  facie showing of facts to sustain a favorable judgment." (*Navellier, supra,* 29 Cal.4th at p. 89.)

ORDER ON SUBMITTED MATTER 113CV244982

1   To state a prima facie claim for promissory fraud, Ma Labs must plead and prove that Shen:

2   (1) made a promise regarding a material fact; (2) with the contemporaneous intent not to

3   perform; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages.  (See

4   *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.)  Here, while the necessary elements are

5   pleaded (albeit in a conclusory fashion), they are not supported by evidence demonstrating the

6   viability of the promissory fraud claim.  Ma Labs provides evidence that Shen made a promise,

7   and that it relied on that promise, but fails to provide any evidence demonstrating a

8   contemporaneous intent not to perform, intent to induce reliance, or resulting damages.

9   Accordingly, Ma Labs fails to demonstrate a probability of prevailing on the third cause of action

10   for fraud.

11

12       Consequently, Shen's special motion to strike is GRANTED as to the third cause of

13   action, and DENIED as to the first, second and fourth causes of action.

14

15       Shen's objections to the evidence proffered by Ma Labs do not serve as a basis for this

16   ruling.  With regard to the first, second, and fourth causes of action, the Court does not reach the

17   evidentiary prong of the anti-SLAPP analysis.  With regard to the third cause of action, the Court

18   finds that Ma Labs has failed to provide evidence demonstrating the viability of the fraud claim.

19

20

21   Dated:

22      JUL 0 9 2013

23

24                     HON MARK H. PIERCE

                         JUDGE OF THE SUPERIOR COURT

25

26

27

28

ORDER ON SUBMITTED MATTER 113CV244982

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
191 N. First Street
San Jose, CA  95113-1090

TO:     Randall C. Creech
        Creech Liebow & Kraus
        333 W. San Carlos Street  Suite 1600
        San Jose,  CA 95110

RE:  MA Laboratories, Inc. vs B. Shen
Case Nbr:  1-13-CV-244982

PROOF OF SERVICE

Order on Submitted Matter

was delivered to the parties listed below in the above entitled case as set
forth in the sworn declaration below.

Parties/Attorneys of Record:

CC: Thomas M. Litton , Law Office Of Thomas Marc Litton
        555 Montgomery St., Suite 1206, San Francisco, CA 94111

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with
Disabilities Act, please contact the Court Administrator's office at (408)882-2700, or use the Court's TDD line, (408)882-2690 or
the Voice/TDD California Relay Service, (800)735-2922.

DECLARATION OF SERVICE BY MAIL: I declare that I served this notice by enclosing a true copy in a sealed envelope, addressed to each
person whose name is shown above, and by depositing the envelope with postage fully prepaid, in the United States Mail at
San Jose, CA on 7-16-13.  DAVID H. YAMASAKI, Chief Executive Officer/Clerk by Mai Jansson, Deputy

CIV-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Randall C. Creech, SBN 65542
Creech, Liebow & Kraus
333 West San Carlos Street, Suite 1600

San Jose, CA  95110
TELEPHONE NO.: 408-993-9911   FAX NO. (Optional): 408-993-1335
E-MAIL ADDRESS (Optional): rcreech@sjlegal.com
ATTORNEY FOR (Name): Plaintiff MA LABORATORIES, INC.

FOR COURT USE ONLY

ENDORSED

2013 JUL 24  A 0 26

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By_____ Jauregui
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA  95113
BRANCH NAME: Unlimited Jurisdiction

PLAINTIFF/PETITIONER: MA LABORATORIES, INC.
DEFENDANT/RESPONDENT: BING SHEN, an individual

| NOTICE OF ENTRY OF JUDGMENT OR ORDER | CASE NUMBER: |
|---|---|
| (Check one):  [X] UNLIMITED CASE (Amount demanded exceeded $25,000)   [ ] LIMITED CASE (Amount demanded was $25,000 or less) | 1-13-CV-244982 |

TO ALL PARTIES :

1. A judgment, decree, or order was entered in this action on (date): July 10, 2013

2. A copy of the judgment, decree, or order is attached to this notice.

Date: July 23, 2013

Randall C. Creech
(TYPE OR PRINT NAME OF  [ ] ATTORNEY  [ ] PARTY WITHOUT ATTORNEY)

▶ _____
(SIGNATURE)

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
CIV-130 [New January 1, 2010]

NOTICE OF ENTRY OF JUDGMENT OR ORDER

Legal
Solutions
Plus

CIV-130

| PLAINTIFF/PETITIONER: MA LABORATORIES, INC. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: BING SHEN, an individual | 1-13-CV-244982 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF ENTRY OF JUDGMENT OR ORDER

*(NOTE: You cannot serve the Notice of Entry of Judgment or Order if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*
333 West San Carlos Street, Suite 1600
San Jose, CA 95110

2. I served a copy of the *Notice of Entry of Judgment or Order* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☒ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Entry of Judgment or Order* was mailed:
   a. on *(date):* July 24, 2013
   b. from *(city and state):* San Jose, California

4. The envelope was addressed and mailed as follows:
   a. Name of person served: Thomas Litton
      Las Office of Thomas Marc Litton
      Street address: 555 Montgomery Street #1206
      City: San Francisco
      State and zip code: California, 94111

   b. Name of person served:
      Street address:
      City:
      State and zip code:

   c. Name of person served:
      Street address:
      City:
      State and zip code:

   d. Name of person served:
      Street address:
      City:
      State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached _____.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 24, 2013

Elaine Durand
(TYPE OR PRINT NAME OF DECLARANT)          ► E Durand
                                            (SIGNATURE OF DECLARANT)

Exhibit F

Janette Wipper (CA Bar # 275264)
jwipper@swhlegal.com
Xinying Valerian (CA Bar # 254890)
xvalerian@swhlegal.com
SANFORD WITTELS & HEISLER, LLP
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

Thomas Marc Litton (CA Bar # 119985)
marc@littonlaw.com
LAW OFFICES OF THOMAS MARC LITTON
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone: (415) 795-2014
Facsimile: (415) 795-2021

*Attorneys for Plaintiffs and California Plaintiff Class*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

## UNLIMITED JURISDICTION

| | |
|---|---|
| GUANG TIAN, YAN NIE, JING JIAN WU, ZHEN SHENG YIN, TIE QUAN MA, MING FANG TIE, JIAN EN LIN, YUN YING LIN, YU HONG CHANG, YI WU On Behalf of themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MA LABORATORIES, INC.,<br><br>Defendants. | Case No. 1-11-CV-195373<br><br>**PLAINTIFF YAN NIE'S OBJECTIONS AND RESPONSES TO DEFENDANT MA LABORATORIES, INC.'S FORM INTERROGATORIES – EMPLOYMENT LAW** |

PROPOUNDING PARTY:   Defendant MA LABORATORIES, INC.

RESPONDING PARTY:    Plaintiff YAN NIE

SET:               One.

 Pursuant to, pursuant to California Code of Civil Procedure § 2030.210 *et seq.*, Plaintiff

Yan Nie ("Plaintiff"), through his attorneys, hereby objects and responds to Defendant Ma

PLAINTIFF YAN NIE'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM INTERROGATORIES – EMPLOYMENT LAW

**Form Interrogatory – Employment Law No. 202.1:**

Do you contend that any ADVERSE EMPLOYMENT ACTIONS against you were discriminatory? If so:

(a) identify each ADVERSE EMPLOYMENT ACTION that involved unlawful discrimination;

(b) identify each characteristic (for example, gender, race, age, etc.) on which you base your claim or claims of discrimination;

(c) state all facts upon which you base each claim of discrimination;

(d) state the name, ADDRESS, and telephone number of each PERSON with knowledge of those facts; and

(e) identify all DOCUMENTS evidencing those facts.

**Response to Form Interrogatory – Employment No. 202.1:**

Plaintiff objects to this interrogatory on the ground that it is vague, ambiguous, and overly broad as to scope and time. Subject to and without waiving the foregoing objections, Plaintiff responds:

Yes, I believe I was the victim of discrimination based on the fact that I am a monolingual Chinese speaker and immigrant who came to the United States as an adult.

(a)    Ma Labs tried to trick me into signing an unreasonable and illegal English-only contract to give up my rights. That kind of dishonesty was the usual practice throughout my years at Ma Labs. On many previous occasions, Ma Labs required me to sign documents that I could not read, without giving me a copy, without giving me a good translation verbally or in writing. We all had to sign whatever the company gave us, regardless of whether we wanted to, because we did not want to lose our jobs.

(b)    National origin and race.

(c)    Most of the employees and management people at Ma Labs are native Chinese speakers. Of the management persons that I know of, and of all the workers doing manual labor, 100% spoke Chinese. Many if not all of the management personnel know how to read and write Chinese. We all had a common spoken language at work: Chinese.

PLAINTIFF YAN NIE'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM INTERROGATORIES –
EMPLOYMENT LAW

1    employee rights are unwaivable.

2    California Wage Order No. 7-2001.

3    California Labor Code §§ 6300 et seq.; §§ 6310, 6400, 6401, 6401.7, 6402, 6403, 6404.

4    California Business and Professions Code §§ 17200 et seq.

5    (b)

6    The company never paid accurate overtime, and it did not count all the time that we

7    were actually working, and it did all of this on purpose and designed the timekeeping

8    machine to deprive us of any time worked outside of the official shift.  The company made

9    us work during lunch breaks, without pay, before February 15, 2010.  It never provided any

10   rest breaks.  Even after February 15, 2010, no one ever told us we were allowed to take any

11   breaks, other than lunch.

12   At some point in 2009 or 2010, a worker named Shi Bing at Ma Labs filed a labor

13   claim against the company and she won the case.  She was represented by one of the

14   attorneys who is representing us now.  Then, the company realized it was in trouble, so it

15   started to change some things.  The company made us sign a document dated February 15,

16   2010 and at the same time the company told us to start punching in and out for lunch.  This

17   document was in English only.  No one representing the company explained the memo

18   verbally to us.  One or another of my co-workers read a little English, and they told us that

19   the company was changing the lunch procedure, and my manager told us we had to punch

20   in and out for lunch.

21   Guang Tian and I were interviewed by government labor investigators.  I think it

22   was in early June 2010.  Two female investigators came and asked for face to face

23   individual meetings with the employees.  Warehouse manager A-Mao Hsiao selected the

24   two of us from Warehouse to speak with them.  Before taking us to the investigators, A-

25   Mao told us to say that if we are asked whether we have rest breaks, we should say "yes,

26   we have a 10 minute break in the morning, and a 10 minute break in the afternoon.  Then

27   HR manager Christy came into the room with us to translate.  The government investigators

28

13                                      Case No. 1-11-CV-195373.

PLAINTIFF YAN NIE'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM INTERROGATORIES –
EMPLOYMENT LAW

1    said, we want to speak to the employees alone, and asked Christy to leave the room. But

2    Christy insisted that she had to be there to translate. The 5 of us in the room: Guang, Yan

3    Nie, Christy, 2 female employees from Inventory (one was an ordinary worker, the other

4    was small group leader Michelle), and the 2 investigators who were American ladies. I was

5    thinking in my head: Even if we told the truth, Christy might not translate truthfully the

6    responses to the American ladies and I would not even know the difference, and I would

7    probably be fired. So, when we were asked about rest breaks, Yan Nie and I said exactly

8    what A-Mao told us to say. I only lied to the labor department because Christy was sitting

9    there and I did not want to lose my job.

10          In late June, our manager A-Mao gave each of us an agreement to sign right away.

11   No manager and no one in HR explained it to us at the time. I could not read it, and there

12   was some talk among warehouse workers who were all speculating about what the

13   agreement said. Someone said that the document affected our legal rights in the event of a

14   future accident, and we feared that we could be injured and not have any legal recourse. In

15   Warehouse, almost everyone signed it right away even though they did not want to sign

16   something that looked serious and that they could not read, because we all knew that the

17   company could easily get rid of people who resisted the orders of the management.

18   However, several of my friends and I did not sign it right away, and we decided it would be

19   reasonable to ask management for a Chinese translation. So we told our manager that we

20   were waiting for a Chinese translation.

21          Several days passed and we did not get a Chinese translation. Then, in early July,

22   we workers met with management twice.

23          The first time, it was a group meeting initiated by the management. Management

24   instructed the 6 of us who still had not signed the agreement to go to a conference room (we

25   5 plaintiffs plus one guy from Tianjin city who may have gone back to China and he is not

26   part of this case). It was just Helen (pregnant lady from HR) and company attorney Mark

27   Musto representing the company. Helen was translating for the attorney, but she was

28                                              14                   Case No. 1-11-CV-195373.
─────────────────────────────────────────────────────────────────
PLAINTIFF YAN NIE'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM INTERROGATORIES –
                                    EMPLOYMENT LAW

1   saying a mixture of English and Chinese, and it was hard to understand her. It was obvious

2   there were a lot of English words being said that Helen did not know how to say in

3   Chinese. Below is what I remember everyone saying at this meeting, but I am not sure if

4   what Helen said the company attorney said is correct. Sometimes Helen added her own

5   comments.

6        The questions/answers that I recall from this meeting were:

7   -  What if something happened in the future, can we sue? Are you saying that if something

8      happened to us in the future, we cannot go to court?

9   -  Attorney said correct, you could not go to court, you can go to a place that provides

10     dispute resolution, but it's not a court.

11  -  HR or the attorney said: If you're not satisfied with something, if you had complaints

12     and asserted grievances, you should say so now, and tell us now. The company can pay

13     $5k to $10k compensation. I understood that to mean a special compensation for just

14     the few of us who had grievances. The attorney wrote the numbers on the blackboard.

15     We did not know what exactly the reason for the compensation would be, or how we

16     could get it. That was not at all the reason we were refusing to sign the agreement at the

17     time. We went into the meeting just asking for a Chinese translation.

18  -  W employees said something to the effect of: "Today we're not here to ask for money.

19     We're here to ask for a Chinese translation. We just want to understand this agreement

20     in Chinese."

21  -  One of my co-workers asked the company attorney if he were asked to sign this, would

22     he? And the attorney said, "no, I would not sign it."

23  -  Our co-worker from Tianjin (the one who moved back to China) asked: Is it true that if

24     we did not sign, we have to look for another job?

25  -  HR said "no, if you don't sign, you won't get penalized."

26  I cannot remember the exact order of the questions or who asked each question. I believed

27  the explanations and answers we received from the company attorney and HR were

28

                                          15                    Case No. 1-11-CV-195373.
              PLAINTIFF YAN NIE'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM INTERROGATORIES –
                                         EMPLOYMENT LAW

1   inadequate and unreliable. This discussion was not a substitute for getting a Chinese
2   translation.

3       The second meeting was two days later. Everyone got bonuses, and only we did not.
4   We went to HR to ask, "we're employees like everyone else, we have gotten bonuses like
5   everyone else, why this time we haven't gotten a bonus, isn't this a penalty?" HR didn't
6   say anything, we went back to Warehouse. But then they called us back to HR an hour
7   later. As we were waiting by HR, the company's people were conferring for like 20
8   minutes, while we waited.

9       Then they pulled us one by one into the small meeting room. They said you are
10  being recorded, but I didn't see any recorder and I don't know if they hid a recording
11  device somewhere.

12      I asked, "Why haven't I got a bonus?" HR said very clearly, "if you sign this, you
13  will get a bonus too, but if you don't sign it, you won't get it." Then I said, "Didn't you say
14  'no bonus, no penalty.' Why have you changed the message to, 'If you sign, you get bonus,
15  if you don't sign, you don't get anything?'" Again, HR said loud and clear, "if you sign
16  right now, we'll give you a check right now." They said "do you understand that?" I said
17  "yes," and they said, "OK you can go now."

18      The next day, Wu was fired. Then a couple months after that, Tiequan Ma and I
19  were fired. After them, Guang Tian and Mingfang Tie were fired.

20  **Form Interrogatory – Employment Law No. 207.2:**

21      Did the EMPLOYEE complain to the EMPLOYER about any of the unlawful conduct alleged
22  in the PLEADINGS? If so, for each complaint:

23      (a) state the date of the complaint;

24      (b) state the nature of the complaint;

25      (c) state the name and ADDRESS of each PERSON to whom the complaint was made;

26      (d) state the name, ADDRESS, telephone number, and job title of each PERSON who

27          investigated the complaint;

28                                         16                Case No. 1-11-CV-195373.

1    Subject to and without waiving the foregoing objections, Plaintiff responds:

2         No.

3    **Form Interrogatory – Employment Law No. 215.2:**

4         Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded

5    statement from any individual concerning the ADVERSE EMPLOYMENT ACTION? If so, for

6    each statement state:

7         (a) the name, ADDRESS, and telephone number of the individual from whom the statement

8              was obtained;

9         (b) the name, ADDRESS, and telephone number of the individual who obtained the statement;

10        (c) the date the statement was obtained; and

11        (d) the name, ADDRESS, and telephone number of each PERSON who has the original

12            statement  or a copy.

13   **Response to Form Interrogatory – Employment Law No. 215.2:**

14        Plaintiff objects to this interrogatory on the ground that it is vague, ambiguous,

15   incomprehensible and overly broad as to scope and time and as to the term, "INCIDENT." Plaintiff

16   objects to this interrogatory to the extent that it seeks privileged attorney work-product. *See Nacht*

17   *& Lewis Architects Inc v. Superior Court*, 47 Cal.App.4th 214, 217-18 (Ct. App. 3rd Dist. 1996).

18   Subject to and without waiving the foregoing objections, Plaintiff responds:

19        No.

20

21   Dated: July 31, 2012                    SANFORD WITTELS & HEISLER, LLP

22

23                                           By: Xinying Valerian
                                             Attorneys for Plaintiffs

24

25

26

27

28

PLAINTIFF YAN NIE'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM INTERROGATORIES –
EMPLOYMENT LAW

## PROOF OF SERVICE

I, the undersigned, declare as follows: I am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within entitled action; my business address is: 555 Montgomery Street, Suite 1206, San Francisco, CA. On the date indicated below, I caused to be served the following document(s):

**PLAINTIFF YAN NIE'S OBJECTIONS AND RESPONSES TO DEFENDANT MA LABORATORIES, INC.'S FORM INTERROGATORIES – EMPLOYMENT LAW**

on the attorney(s) named below for *all* defendants in the above referenced case, and addressed as follows:

**Counsel for Defendant Ma Laboratories, Inc.**
Michael E. Caples
Michael S. Ward
Mark L. Musto
Fitzgerald Abbot & Beardsley, LLP
1221 Broadway, 21st Floor
Oakland, CA 94612
Email: mcaples@fablaw.com
      mward@fablaw.com
      mmusto@fablaw.com

(X)        BY MAIL: I placed said documents in a sealed envelope, with said postage thereon fully prepaid for first class mail, for collection and mailing at a metered depository in San Francisco, California.
(X)        BY EMAIL: I emailed the said documents to the following email address: mcaples@fablaw.com, mward@fablaw.com, and mmusto@fablaw.com.
(  )        BY FACSIMILE: I caused the said document(s) to be transmitted by facsimile machine to the number indicated after the address noted above.
(  )        BYFEDERAL EXPRESS:I placed a true and correct copy thereof in a Federal Express(overnight) envelope addressed to the individual named above at the address shown, and by sealing and delivering the aforementioned documents to the Federal Express Drop Box at 100 Montgomery Street, San Francisco, California to be delivered by next day, on this date.
(  )        BY PERSONAL SERVICE: I caused the said document(s) to be personally served on the attorneys identified above at the above address on this date.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 31, 2012 in San Francisco, California.

---

Kevin Castillo

Janette Wipper (CA Bar # 275264)
jwipper@swhlegal.com
Xinying Valerian (CA Bar # 254890)
xvalerian@swhlegal.com
**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

Thomas Marc Litton (CA Bar # 119985)
marc@littonlaw.com
**LAW OFFICES OF THOMAS MARC LITTON**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone: (415) 795-2014
Facsimile: (415) 795-2021

*Attorneys for Plaintiffs and California Plaintiff Class*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SANTA CLARA

### UNLIMITED JURISDICTION

| | |
|---|---|
| GUANG TIAN, YAN NIE, JING JIAN WU, ZHEN SHENG YIN, TIE QUAN MA, MING FANG TIE, JIAN EN LIN, YUN YING LIN, YU HONG CHANG, YI WU On Behalf of themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MA LABORATORIES, INC.,<br><br>Defendants. | Case No. 1-11-CV-195373<br><br>**PLAINTIFF GUANG TIAN'S OBJECTIONS AND RESPONSES TO DEFENDANT MA LABORATORIES, INC.'S FORM INTERROGATORIES – EMPLOYMENT LAW** |

PROPOUNDING PARTY:   Defendant MA LABORATORIES, INC.

RESPONDING PARTY:   Plaintiff GUANG TIAN

SET:   One.

Pursuant to, pursuant to California Code of Civil Procedure § 2030.210 *et seq.*, Plaintiff

Guang Tian ("Plaintiff"), through his attorneys, hereby objects and responds to Defendant Ma

1

PLAINTIFF GUANG TIAN'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM
INTERROGATORIES – EMPLOYMENT LAW

**Form Interrogatory – Employment Law No. 202.1:**

Do you contend that any ADVERSE EMPLOYMENT ACTIONS against you were discriminatory?  If so:

    (a) identify each ADVERSE EMPLOYMENT ACTION that involved unlawful discrimination;

    (b) identify each characteristic (for example, gender, race, age, etc.) on which you base your claim or claims of discrimination;

    (c) state all facts upon which you base each claim of discrimination;

    (d) state the name, ADDRESS, and telephone number of each PERSON with knowledge of those facts; and

    (e) identify all DOCUMENTS evidencing those facts.

**Response to Form Interrogatory – Employment No. 202.1:**

Plaintiff objects to this interrogatory on the ground that it is vague, ambiguous, and overly broad as to scope and time.  Subject to and without waiving the foregoing objections, Plaintiff responds:

Yes, I believe I was the victim of discrimination based on the fact that I am a monolingual Chinese speaker and immigrant who came to the United States as an adult.

    (a)   Ma Labs tried to trick me into signing an unreasonable and illegal English-only contract to give up my rights.  That kind of dishonesty was the usual practice throughout my years at Ma Labs.  On many previous occasions, Ma Labs required me to sign documents that I could not read, without giving me a copy, without giving me a good translation verbally or in writing.

    (b)   National origin and race.

    (c)   Most of the employees and management people at Ma Labs are native Chinese speakers.  Of the management persons that I know of, and of all the workers doing manual labor, 100% spoke Chinese.  Many if not all of the management personnel know how to read and write Chinese.  In the entire warehouse department, among 30 or 40-plus workers, maybe only 2 or 3 folks could speak some English and very few could read any English at all.  We all had a common spoken language at work: Chinese.

1  California Labor Code § 206.5; *Armendariz v. Foundation Health Psychcare Services, Inc.*,

2  24 Cal.4th 83 (2000) and other sources of public policy announcing that certain statutory

3  employee rights are unwaivable.

4  California Wage Order No. 7-2001.

5  California Labor Code §§ 6300 et seq.; §§ 6310, 6400, 6401, 6401.7, 6402, 6403, 6404.

6  California Business and Professions Code §§ 17200 *et seq.*

7  (b)

8  The company never paid correct overtime, it did not count all the time that we were actually

9  working, it did not give us uninterrupted lunch breaks before 2/15/2010, it did not gives us any

10  breaks ever.   Before 2/15/2010, we were on-call to work during lunch, and frequently we were

11  required to work during lunch, without pay.  In retrospect, I believe the change in 2/15/2010 was

12  related to the following to incidents.

13  At some point in 2009 or 2010, I don't know exactly when, a worker at Ma Labs filed a

14  labor claim with the labor commissioner and she won the case.  She won the case in part because

15  the company did not have any records to show that she received the pay and the breaks that the law

16  required.  She was represented by one of the attorneys who is representing us now.  Starting in

17  February 2010 our warehouse manager A-Mao told us we had to punch in and out for lunch.

18  Before then, we never did that.

19  Sometime in 2010, I do not remember what month, the government labor investigators

20  came and asked for face to face individual meetings with the employees.  Warehouse manager A-

21  Mao Hsiao selected two of us, Yan Nie and myself, to speak with them.  Before taking us to the

22  investigators, A-Mao told us to say that if we are asked whether we have rest breaks, we should say

23  "yes, we have a 10 minute break in the morning, and a 10 minute break in the afternoon."  I believe

24  he told us to say 10 to 10:10 am and 3 to 3:10 pm, but the exact timeframes he told us I don't

25  remember so clearly, I just remember clearly that he told us to say we had 10 minutes in the

26  morning and 10 in the afternoon.  Then it was HR manager Christy who took us into the room.

27  The government investigators said, we want to speak to the employees alone, and asked Christy to

28

13                    Case No. 1-11-CV-195373.

PLAINTIFF GUANG TIAN'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM
INTERROGATORIES – EMPLOYMENT LAW

1  leave the room. But Christy insisted that she had to be there to translate. The 5 of us in the room:

2  Myself, Yan Nie, Christy, and the 2 investigators who were American ladies. When we were asked

3  about rest breaks, Yan Nie and I said exactly what A-Mao told us to say. I only lied to the labor

4  department because Christy was sitting there and I did not want to lose my job. Now, in retrospect,

5  I wish I had been braver and had spoken up.

6       At the end of June 2010, the company gave us a contract to sign. We were told to return it,

7  signed, by the end of the next day. Almost everyone did it, they signed and turned in the contracts

8  right away, same day or next day. But I know they were not able to read it. There was not enough

9  time for any of us to get a translation, even if we had access to qualified translators. The company

10  was always doing this, and it knew none of us could understand the documents we were signing. I

11  could not read this contract, because the language was too advanced. I can read only short, simple

12  English.

13       In early July, the company organized a meeting for all of us who had not signed to contract.

14  At the meeting: Company Attorney Mark Musto, Helen from HR, and 6 of us workers. The

15  translation was pretty bad, 50/50 Chinese and English. The HR lady could not translate any legal

16  language. Also the HR lady was not only speaking as a translator. Sometimes she would add her

17  own comments. The workers were the 5 of us who are plaintiffs now plus a 6th guy, who is from

18  Tianjin, China and he was working in a different department. The meeting was very long, over an

19  hour. The workers asked questions and Musto gave answers. Since my English was the best of

20  this group of co-workers, I probably understood more than my co-workers.

21       One of the workers asked, is this a legal and proper contract? The attorney did not give us a

22  direct answer, he did not answer yes or no, but he gave an indirect explanation. Another worker

23  asked: If you were us, would you sign the contract? And the attorney said: "No." I myself asked

24  this question, using English: "If I don't sign it, what happening?" My English wasn't perfect, of

25  course, but the attorney understood me. The attorney said: "Then you better find another job!" in

26  almost those exact words.

27       The company's attorney wrote quite a lot of things on the blackboard, in English. I

28

14                                    Case No. 1-11-CV-195373.

PLAINTIFF GUANG TIAN'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM
INTERROGATORIES – EMPLOYMENT LAW

1    couldn't understand the English on the blackboard but I tried listening to him and also listening to

2    the HR lady.

3         The company attorney talked to us about the benefits of signing the contract. The attorney

4    told us that if we signed the contract, in the future if we wanted to sue the company, we cannot go

5    to the regular court, but we can go to another place that is like a small-court where the legal

6    proceeding would be shorter and quicker than regular court. The judge in this small-court would

7    make the decision, win or lose, that's the final decision. Also, there would only be the judge of the

8    small-court, there would be no jury. The attorney also said, even if you signed the contract, you

9    can still make demands of the company, you can still tell the company about your grievances, and

10   the company can make compensation to you of some amount, he wrote something like $1,000 to

11   $15,000, on the board. I can't remember the exact numbers. The attorney said that if we did not

12   sign the agreement, and we sued the company and we lost, we have to pay all of the company's

13   fees and costs if we filed a lawsuit against the company.

14        But I was thinking in my head, if we signed this contract, afterwards, the company will not

15   pay any attention to our concerns. Also, the attorney told us that this contract was a new thing that

16   was being done as an experiment in our warehouse, our place was the first place they are trying

17   this. He said the company was planning to implement the contract in all the other facilities, in

18   other cities and in China too. He said that all employees in the entire company would have to sign

19   it. Whether in fact all other employees in the company was asked to sign it, or actually signed it, I

20   do not know.

21        The attorney never said "you need to sign this contract" and in fact he kept saying "you

22   have the choice." He emphasized the benefits and he did say one time, "you better find another

23   job." However, over and over again, we workers asked "if we did not sign" whether the company

24   would tell us to "go home" or if it would "fire" us. In response to those questions both the attorney

25   and HR folks said very clearly "no, you will not be punished."

26        At the meeting, we kept asking for a Chinese translation of the contract. We knew that we

27   were not fully understanding, and we were afraid we were still missing something.

28

15                          Case No. 1-11-CV-195373.

PLAINTIFF GUANG TIAN'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM
INTERROGATORIES – EMPLOYMENT LAW

1  **Response to Form Interrogatory – Employment Law No. 215.2:**

2      Plaintiff objects to this interrogatory on the ground that it is vague, ambiguous,

3  incomprehensible and overly broad as to scope and time and as to the term, "INCIDENT." Plaintiff

4  objects to this interrogatory to the extent that it seeks privileged attorney work-product. *See Nacht*

5  *& Lewis Architects Inc v. Superior Court*, 47 Cal.App.4th 214, 217-18 (Ct. App. 3rd Dist. 1996).

6  Subject to and without waiving the foregoing objections, Plaintiff responds:

7      No.

8

9

10

11  Dated: July 20, 2012               SANFORD WITTELS & HEISLER, LLP

12

13                                     By: Xinying Valerian
                                   Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF GUANG TIAN'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM
INTERROGATORIES – EMPLOYMENT LAW

### PROOF OF SERVICE

I, the undersigned, declare as follows: I am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within entitled action; my business address is: 555 Montgomery Street, Suite 1206, San Francisco, CA. On the date indicated below, I caused to be served the following document(s):

**PLAINTIFF GUANG TIAN'S OBJECTIONS AND RESPONSES TO DEFENDANT MA LABORATORIES, INC.'S FORM INTERROGATORIES – EMPLOYMENT LAW**

on the attorney(s) named below for *all* defendants in the above referenced case, and addressed as follows:

**Counsel for Defendant Ma Laboratories, Inc.**
Michael E. Caples
Michael S. Ward
Mark L. Musto
Fitzgerald Abbot & Beardsley, LLP
1221 Broadway, 21st Floor
Oakland, CA 94612
Email: mcaples@fablaw.com
        mward@fablaw.com
        mmusto@fablaw.com

(X)         BY MAIL: I placed said documents in a sealed envelope, with said postage thereon fully prepaid for first class mail, for collection and mailing at a metered depository in San Francisco, California.

(X)         BY EMAIL: I emailed the said documents to the following email address: jmcdonald@laborlawyers.com.

( )         BY FACSIMILE: I caused the said document(s) to be transmitted by facsimile machine to the number indicated after the address noted above.

( )         BYFEDERAL EXPRESS:I placed a true and correct copy thereof in a Federal Express(overnight) envelope addressed to the individual named above at the address shown, and by sealing and delivering the aforementioned documents to the Federal Express Drop Box at 100 Montgomery Street, San Francisco, California to be delivered by next day, on this date.

( )         BY PERSONAL SERVICE: I caused the said document(s) to be personally served on the attorneys identified above at the above address on this date.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 20, 2012 in San Francisco, California.

_____

Kevin Castillo

27                                    Case No. 1-11-CV-195373.

Proof of Service

Janette Wipper (CA Bar # 275264)
jwipper@swhlegal.com
Xinying Valerian (CA Bar # 254890)
xvalerian@swhlegal.com
**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

Thomas Marc Litton (CA Bar # 119985)
marc@littonlaw.com
**LAW OFFICES OF THOMAS MARC LITTON**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone: (415) 795-2014
Facsimile: (415) 795-2021

*Attorneys for Plaintiffs and California Plaintiff Class*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

## UNLIMITED JURISDICTION

| | |
|---|---|
| GUANG TIAN, YAN NIE, JING JIAN WU, ZHEN SHENG YIN, TIE QUAN MA, MING FANG TIE, JIAN EN LIN, YUN YING LIN, YU HONG CHANG, YI WU On Behalf of themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MA LABORATORIES, INC., <br><br> Defendants. | Case No. 1-11-CV-195373 <br><br> **PLAINTIFF MINGFANG TIE'S OBJECTIONS AND RESPONSES TO DEFENDANT MA LABORATORIES, INC.'S FORM INTERROGATORIES – EMPLOYMENT LAW** |

PROPOUNDING PARTY:   Defendant MA LABORATORIES, INC.

RESPONDING PARTY:    Plaintiff MINGFANG TIE

SET:                 One.

Pursuant to, pursuant to California Code of Civil Procedure § 2030.210 *et seq.*, Plaintiff

Mingfang Tie ("Plaintiff"), through his attorneys, hereby objects and responds to Defendant Ma

1    (c) state the date on which the PERSON started to perform the duties.

2    **Response to Form Interrogatory – Employment Law No. 201.6:**

3         Plaintiff objects to the interrogatory on the grounds that it seeks information that is already

4    in the possession of Defendant or is more easily obtained by Defendant than by Plaintiff.  To

5    comply with the request would be an undue burden and expense on Plaintiff.  Subject to and

6    without waiving the foregoing objections, Plaintiff responds:

7         I believe that right after I was fired, the other workers, existing ones and new ones, had to

8    continue doing all the same work.  The amount of available work was not decreasing at that time.

9    **Form Interrogatory – Employment Law No. 202.1:**

10    Do you contend that any ADVERSE EMPLOYMENT ACTIONS against you were

11    discriminatory?  If so:

12         (a) identify each ADVERSE EMPLOYMENT ACTION that involved unlawful discrimination;

13         (b) identify each characteristic (for example, gender, race, age, etc.) on which you base your

14             claim or claims of discrimination;

15         (c) state all facts upon which you base each claim of discrimination;

16         (d) state the name, ADDRESS, and telephone number of each PERSON with knowledge of

17             those facts; and

18         (e) identify all DOCUMENTS evidencing those facts.

19    **Response to Form Interrogatory – Employment No. 202.1:**

20         Plaintiff objects to this interrogatory on the ground that it is vague, ambiguous, and overly

21    broad as to scope and time.  Subject to and without waiving the foregoing objections, Plaintiff

22    responds:

23         Yes, I believe I was the victim of discrimination based on the fact that I am a monolingual

24    Chinese speaker and immigrant who came to the United States relatively late in life.

25         (a)    Ma Labs tried to trick me into signing an unreasonable and illegal English-only

26    agreement to give up my rights.  That kind of dishonesty was the usual practice throughout my

27    years at Ma Labs.  On many previous occasions, Ma Labs required me to sign documents that I

28
                                                10            Case No. 1-11-CV-195373.

1    **Response to Form Interrogatory – Employment Law No. 205.1:**

2        Plaintiff objects to the interrogatory on the grounds that it calls for a legal conclusion.

3   Subject to and without waiving the foregoing objections, Plaintiff responds:

4        Yes, Ma Labs fired me in violation of the law and public policy.

5        (a) The sources of public policy include, but are not limited to:

6        California Constitution, Art. I, § 8.

7        California Fair Employment and Housing Act, Government Code §§ 12490 et seq.; §§

8        12940(a), 12940(h), 12940(i), 12940(k), 12951.

9        California Labor Code §§ 226.7, 210, 558, 1194.

10       California Labor Code § 206.5; *Armendariz v. Foundation Health Psychcare Services, Inc.*,

11       24 Cal.4th 83 (2000) and other sources of public policy announcing that certain statutory

12       employee rights are unwaivable.

13       California Wage Order No. 7-2001.

14       California Labor Code §§ 6300 et seq.; §§ 6310, 6400, 6401, 6401.7, 6402, 6403, 6404.

15       California Business and Professions Code §§ 17200 *et seq.*

16       (b)      The factual statement below is based on my own recollection and belief, but some

17   of the precise details are based on notes that I wrote down as the events were happening. I have a

18   personal habit of writing down significant events. My notes are being produced in accordance with

19   Defendant's Request for Production of Documents.

20       The company never paid accurate overtime, and it did not count all the time that we were

21   actually working, and it did all of this on purpose and designed the timekeeping machine to deprive

22   us of any time worked outside of the official shift. The company made us work during lunch

23   breaks, without pay, before February 15, 2010. It never provided any rest breaks.

24       The background leading up to our group being terminated is that a worker at Ma Labs filed

25   a labor claim with the labor commissioner and she won the case. She won the case in part because

26   the company did not have any records to show that she received the pay and the breaks that the law

27   required. She was represented by one of the attorneys who is representing us now. Starting in

28

1   February 2010 our warehouse manager A-Mao told us we had to punch in and out for lunch.

2   Before then, we never did that.

3       June 29, 2010, Ma Labs distributed to every employee an agreement asking us to sign it.

4   According to what a couple of our co-workers said who were able to read a little of it, the

5   agreement talked about us giving up the right to sue the company in court and giving up legal

6   rights.  I wanted to find out what the agreement actually said.  I feared that someday if something

7   bad happened, I would not have any legal rights or legal measures to take.  Based on conversations

8   we had in Warehouse, I believe my co-workers had the same fear.

9       Immediately after we received the agreement, many of my co-workers verbally said they

10  did not feel right about signing it, and they were not going to sign it until they received an

11  explanation, or received a Chinese copy.  But the workers were afraid.  By the end of the next day,

12  most of the workers had signed it even if initially they did not want to.  As far as I know, most

13  employees signed it by the end of the next day.

14      July 5, 2010, my department manager "Hsiao A-Mao" asked me if I would sign the

15  agreement.  I said I cannot understand it in English, and I need the company to explain it to me or

16  give me a Chinese translation.  In Warehouse, other than the 5 of us who are plaintiffs now,

17  everyone else signed the agreement even though at first they also said they did not want to sign it.

18      July 6, 2010, Tuesday, approximately 3 pm, the company's attorney met with several of us

19  in conference room #1 to explain the contents of the agreement, with HR lady Helen acting as

20  translator.  At the time, there were 6 of us who had not signed the agreement who were in this

21  meeting: 5 of us who are plaintiffs now, and one additional guy named A-Bao who was from

22  Shipping department.

23  Hearing from the HR translator, my understandings of the attorney's presentation was:

24  (1) If you signed the agreement, and you had complaints against the company and you pursued

25      the complaints, the company can give you "5k to 10k."  (He wrote these numbers the

26      blackboard.)

27  //

28

                          14                  Case No. 1-11-CV-195373.

1    (2) Previous employment agreements and rules are still in effect, this agreement incorporates

2        those prior agreements and rules.

3    (3) Signing this agreement means you give up the right to sue, but you keep the right to discuss

4        problems with your company.

5    (4) If you don't agree to this agreement, when the stated period for retracting the agreement is

6        over, you probably won't be able to continue working and you will have to find a second

7        job.

8       As the attorney was giving this talk, one of the employees asked, "if we don't, will we be

9 fired, and if we sign, then we will get a bonus?" I think A-Bao asked that question, The attorney

10 said if you don't sign you won't get a bonus, and you won't get a penalty. I understood the

11 message to be: "No bonus and no penalty,"

12      I personally asked, "let's say you were me and you were asked to sign this agreement,

13 would you sign?" The attorney thought about it, and he said "no, I would not sign it." Then, I

14 asked, "doesn't this agreement contain terms that would be considered unreasonable and

15 oppressive ?" There was no direct answer. The attorney explained: The terms in here are similar

16 to the sorts of rules that we have about start of shift, end of shift, and the wages you earn every day,

17 and the terms are reasonable and normal, and you can decide not to sign it.

18      I asked the attorney, "if we don't sign, doesn't that imply that we are giving up this job."

19 They said "yes" to my understanding.

20      The meeting basically ended there. We employees asked for a Chinese version of the

21 agreement. I don't think the translation was reliable because there was a mixture of English and

22 Chinese and Helen was also adding comments and opinions, not only translating for the attorney.

23      Prior to that meeting, I had not made up my mind whether to sign it. I was fearful that not

24 signing it would result in termination. I was fearful also about giving up my legal rights. But after

25 the presentation from the attorney, and hearing the attorney say that he himself would not sign it if

26 he were a worker, I basically decided that I would not sign it.

27      July 8, 2010, Thursday, around 3 pm, the employees who signed the agreement each

28

PLAINTIFF MINGFANG TIE'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FORM
INTERROGATORIES – EMPLOYMENT LAW

1   **Response to Form Interrogatory – Employment Law No. 215.2:**

2       Plaintiff objects to this interrogatory on the ground that it is vague, ambiguous,

3   incomprehensible and overly broad as to scope and time and as to the term, "INCIDENT." Plaintiff

4   objects to this interrogatory to the extent that it seeks privileged attorney work-product. *See Nacht*

5   *& Lewis Architects Inc v. Superior Court*, 47 Cal.App.4th 214, 217-18 (Ct. App. 3rd Dist. 1996).

6   Subject to and without waiving the foregoing objections, Plaintiff responds:

7       No.

8

9

10  Dated: July 20, 2012                    SANFORD WITTELS & HEISLER, LLP

11

12      By: Xinying Valerian
        Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### PROOF OF SERVICE

I, the undersigned, declare as follows: I am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within entitled action; my business address is: 555 Montgomery Street, Suite 1206, San Francisco, CA. On the date indicated below, I caused to be served the following document(s):

**PLAINTIFF MINGFANG TIE'S OBJECTIONS AND RESPONSES TO DEFENDANT MA LABORATORIES, INC.'S FORM INTERROGATORIES – EMPLOYMENT LAW**

on the attorney(s) named below for *all* defendants in the above referenced case, and addressed as follows:

**Counsel for Defendant Ma Laboratories, Inc.**
Michael E. Caples
Michael S. Ward
Mark L. Musto
Fitzgerald Abbot & Beardsley, LLP
1221 Broadway, 21st Floor
Oakland, CA 94612
Email: mcaples@fablaw.com
        mward@fablaw.com
        mmusto@fablaw.com

(X)        BY MAIL: I placed said documents in a sealed envelope, with said postage thereon fully prepaid for first class mail, for collection and mailing at a metered depository in San Francisco, California.

(X)        BY EMAIL: I emailed the said documents to the following email address: jmcdonald@laborlawyers.com.

( )        BY FACSIMILE: I caused the said document(s) to be transmitted by facsimile machine to the number indicated after the address noted above.

( )        BY FEDERAL EXPRESS: I placed a true and correct copy thereof in a Federal Express(overnight) envelope addressed to the individual named above at the address shown, and by sealing and delivering the aforementioned documents to the Federal Express Drop Box at 100 Montgomery Street, San Francisco, California to be delivered by next day, on this date.

( )        BY PERSONAL SERVICE: I caused the said document(s) to be personally served on the attorneys identified above at the above address on this date.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 20, 2012 in San Francisco, California.

_____

Kevin Castillo

Case No. 1-11-CV-195373.

Proof of Service

Exhibit G