IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LOU, MARSHA BEER, SIMON NIM, and JESUAN RUIZ RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MA LABORATORIES, INC., ABRAHAM MA, CHRISTINE RAO, and CHRISTY YEE,<br><br>Defendants. | No. C 12-05409 WHA<br><br>**OMNIBUS ORDER RE CERTIFICATION AND RELATED MOTIONS** |

In this FLSA and wage-and-hour action, plaintiffs move for conditional certification of a FLSA collective action and certification of California state law claims under Rule 23(b)(2) and (b)(3). Plaintiffs also separately move for equitable tolling, equitable estoppel, and corrective notice. Defendants separately move to disqualify class representatives and to disqualify class counsel. Defendants separately move to exclude an expert declaration. For the reasons stated below, plaintiffs' motion for FLSA and class certification is **DENIED**, subject to the limited exception described in this order. The other motions are **DENIED AS MOOT**.

**STATEMENT**

In 2011, a group of former employees of Ma Labs filed a wage-and-hour class action on behalf of non-exempt California employees in state court. *Tian, et al v. Ma Laboratories, Inc.*, No. 1-11-cv-195373 (Superior Court of California, County of Santa Clara). The *Tian* plaintiffs allege violation of state wage-and-hour laws, including failure to pay overtime, failure to provide off-duty meal and rest periods, failure to timely pay wages upon separation, failure to keep

accurate wage statements, and unfair competition. Sanford Heisler, LLP, including Attorneys Janette Wipper and Xinying Valerian, and Attorney Thomas Marc Litton from the Law Offices of Thomas Marc Litton propose themselves as class counsel. The *Tian* class certification hearing is scheduled for August 2014.

In 2012, the same proposed class counsel in *Tian* filed this new FLSA and wage-and-hour action. The operative amended complaint alleges many of the same or substantially similar claims as in *Tian*. Those claims include failure to pay overtime, failure to provide off-duty meal and rest periods, failure to timely pay wages upon separation, failure to keep accurate wage statements, and unfair competition.

On October 2013, plaintiffs moved for conditional certification of a nationwide collective action pursuant to 29 U.S.C. 216(b) and certification of a California class under Rule 23(b)(2) and (b)(3).

## ANALYSIS

Pursuant to Rule 23(a), for a named plaintiff to obtain class certification, the court must find: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) adequacy of the class representatives and counsel. A number of issues doom plaintiffs' motion, most notably, the failure to establish the adequacy of class counsel.

### 1.    FRCP 23(A)(4): ADEQUACY OF CLASS COUNSEL.

Defendants move to disqualify Sanford Heisler LLP and Attorney Thomas Marc Litton based on the assertion that plaintiffs' counsel cannot fairly and adequately protect the interests of the class. This order agrees. Rule 23(a)(4) requires that the representative parties, including counsel, "fairly and adequately protect the interests of the class." This threshold inquiry is so important that the rule requires consideration of "any other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class." FRCP 23(g)(1)(B). Our court of appeals has stated:

> Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Adequacy of class counsel is vital to protect the interests of absent class members. Class counsel wield great power. Strategic decisions made by counsel to litigate and/or settle class claims have profound implications on the rights of absent class members. At best, absent class members' interests can be vindicated. At worst, litigation and settlement decisions can result in preclusion, collusion, and exclusion. It is thus critical that sufficient procedural and structural protections be enforced so that the interests of absent and putative class members are not abridged.

The Supreme Court has stated that an attorney who currently represents another class against the same defendant may not serve as class counsel. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). A prominent treatise states: "Courts have consistently held that counsel cannot simultaneously represent a class and prosecute either individual or class claims against the same defendants in a different proceeding, even if there is partial overlap among the plaintiffs or class members in the cases." 1 MCLAUGHLIN ON CLASS ACTIONS 4:39 (10th ed.).

When there are different plaintiffs in different actions proceeding at the same time with the same claims, same counsel, and same defendants, the risk of counsel compromising one class for another is intensified. Here, plaintiffs' counsel state that there is no overlap between the 553 employees on the *Tian* class list and the 283 employees on the *Lou* class list (Litton Decl. ¶¶ 7, 9, 10). Nonetheless, the *Lou* action and parallel *Tian* action involve the same plaintiffs' counsel, same defendants, and substantially similar claims and evidence. Both actions involve allegations of "off-the-clock" work based, in part, on evidence from Ma Labs' time-clock records, as well as allegations of failure to keep accurate wage statements and payroll records and failure to provide meal and rest breaks. Defendants have an incentive to settle all claims at once, if it settles at all, thereby creating opportunities for counsel to manipulate the allocation of settlement dollars. A class in this case deserves to be championed by its counsel unencumbered by their duties to other clients. Counsel have a conflict and may not serve.

Accordingly, this order finds that proposed class counsel cannot fairly and adequately represent the interests of the putative Rule 23 and FLSA classes in this action. Rule 23, of course, does not apply to the proposed FLSA collective action. The concerns of this order, however, do.

3

A district court's discretion over FLSA collective actions is well-recognized by the Supreme Court. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989).

\*   \*   \*

To be sure, this order proceeds to address some of the other deficiencies. *First*, plaintiffs propose one broad class to certify even though different employees were treated differently across different periods of time. Prior to October 2010, sales employees were classified as exempt. After October 2010, sales employees were classified as non-exempt. A new time-clock interface and "claim overtime" system was also implemented around the same time. In March 2013, additional clock restrictions were implemented. These differences mean that plaintiffs' omnibus class cannot be certified as a whole, but narrower classes would have to be considered.

*Second*, predominance and commonality are obstacles to plaintiffs' proposed class. In *Comcast Corp. v. Behrend*, — U.S. —, 133 S. Ct. 1426, 1433 (2013), the Supreme Court held that in order for Rule 23(b)(3)'s predominance requirement to be satisfied, plaintiff must set forth a measurement method that can be applied class-wide and that ties plaintiff's legal theory to the impact of the defendant's allegedly illegal conduct. Plaintiffs have not done so here.

Plaintiffs argue that Ma Labs employed a computerized payroll and time-keeping database which systematically shaved-off time. Upon review of the briefs and more than 64 declarations submitted by the parties and upon providing plaintiffs with an opportunity to explain their theory at the December hearing, this order finds that plaintiffs have *not* identified a common method of proof on a classwide basis for their off-the-clock claims in this action. This is because employee time-keeping and overtime practices varied greatly. The declarations reveal that:

- Some employees never worked overtime; others routinely worked overtime (Hui Wang Decl. ¶ 9, Sean Wooi Chua Decl. ¶ 9, Soacha Decl. ¶ 9, Sue Su Decl. ¶ 6, Ling Ling Wang Decl. ¶ 8, Nim Decl. ¶ 18, Lu Zhang Decl. ¶ 9). One employee stated, "I have never worked off the clock" (Jaleel Decl. ¶ 8).

- Some employees obtained overtime approval; others never requested it (Maxwell Decl. ¶ 7, Chia Chi Yi Decl. ¶ 20, Jiawei Zhou Decl. ¶ 10, Sermone Decl. ¶ 17).

- Two employees stated, "I actually worked overtime almost every week. I never clicked 'claim overtime'" (Chia Chi Yi Decl. ¶ 21, Ssuchia Chen Decl. ¶ 21). Another employee stated on approximately 4-5 occasions, he "worked 15-45 minutes after clocking out at 5:30 p.m. to search for new

4

    customers or answer customer questions and did so voluntarily. I did not request overtime pay on those occasions" (Sirikolkarn Decl. ¶ 9). Another employee stated that "[i]t was a widely known and unspoken rule that no matter how much you worked, Ma Labs would not pay overtime" (Chia Chi Yi Decl. ¶ 21). Another employee stated, "[w]hen there is a need to stay later, I request and obtain approval" (Hsiao Hsien Liu Decl. ¶ 9).

- At least two employees stated that they knew they could claim overtime but chose not to claim it (Yam Decl. ¶ 15, Jiawei Zhou Decl. ¶ 10). One employee stated that he knew he could have asked for overtime, but it was so rare and "only a few seconds or minutes" (Foo Decl. ¶ 9).

- One employee stated he "worked overtime almost every week," but he "only clicked 'claim overtime' one time" (Nim Decl. ¶ 18). Another employee stated that she was paid for overtime last May (Ching Yi Lee Decl. ¶ 9).

- One employee stated that on occasion he would clock out for lunch and return to his desk to eat and do work (Nim Decl. ¶ 19). Another employee stated she never worked before swiping in (Shirakawa Decl. ¶ 6). One employee stated employees were "instructed to clock in at the start of our scheduled shifts, clock out and in for our lunch breaks, and clock out at the end of our scheduled shifts, regardless of whether or not we were working extra hours" (Sermone Decl. ¶ 12).

Even when employees clocked in, they could easily have been engaged in non-work and personal activities. This is because Ma Labs "allows for quota time for internet searches up to one hour per day" (Huo Decl. ¶ 12, Jaleel Decl. ¶ 15, Kim Decl. ¶ 14, Lan Decl. ¶ 14, Duck Hwan Lee Decl. ¶ 15).

    These collective variations cause plaintiffs' off-the-clock claims to necessarily dissolve into a series of mini-trials. Without remotely reliable time-keeping data capable of proving plaintiffs' off-the-clock claims on a classwide basis, this action becomes swollen with individualized, anecdotal, and occasionally speculative testimony and hearsay.

    Dr. Richard Drogin's report fails to save the day, even if it were to survive defendants' motion to exclude the report under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993) and *Wal-Mart, Inc. v. Dukes*, 564 U.S. —, 131 S. Ct. 2541, 2555–57 (2011). One of the notable difficulties with the report is that Dr. Drogin proposes individualized calculations for each class member based on time-clock data. "For example, a class member's damages for any unpaid shaved work time could be computed as (unpaid shaved work hours from the time clock data for the class member) x (hourly rate)." This proposed formula is problematic because of the individualized variances across time-clock data. Dr. Drogin's telephone and email findings are

5

also (1) problematic because the mere fact that phone calls were made or emails were sent before an employee swiped in or after an employee swiped out is not evidence that the employee was doing compensable work, given that employees could have made personal phone calls or sent non-work emails during this time, and (2) limited because he reviewed email data for 15 employees and telephone data for 42 employees — a small subset of the proposed class, which may not be representative of the class (Drogin Decl. ¶¶ 31, 32, 36). Without a method of classwide damages proof tethered to plaintiffs' theory of liability, it becomes difficult to imagine how plaintiffs' class action could proceed.

\*          \*          \*

Accordingly, plaintiffs' motion for FLSA and class certification is **DENIED**, subject to the possible limited exception described below. The other motions, and defendants fourteen separate sets of evidentiary objections filed without regard to Local Rule 7-3(a) and plaintiffs' evidentiary objections, unless otherwise relied upon in this order, are **DENIED AS MOOT**. On January 3, defendants requested judicial notice of a disciplinary letter, dated October 2009, issued by the District of Columbia bar association regarding plaintiffs' counsel David W. Sanford. This order finds it unnecessary to take judicial notice of the letter; the request is **DENIED**.

The limited exception concerns the FLSA collective action. A majority of courts follow a two-step approach to determine whether to permit a collective action under 29 U.S.C. 216(b). *Till v. Saks, Inc.*, No. 11-00504-SBA, 2013 WL 5755671, at \*8–9 (N.D. Cal. Sept. 30, 2013) (Judge Saundra Armstrong). *First,* courts decide whether the potential class should be given notice of the action. *Second*, defendant is permitted to move to decertify the class once discovery is complete and the case is ready to be tried. The first "notice" step determination is typically made under a more lenient standard because of the limited amount of evidence available in such early stage cases. Plaintiffs, here, are at the first step even though the motion was brought at a more advanced stage in the schedule. If independent and adequate replacement counsel were to be completely substituted in for existing plaintiffs' counsel, the Court would entertain a motion to extend the schedule on the FLSA collective action. For the reasons stated earlier, the Rule 23 class action, of course, cannot proceed. Notice to putative FLSA collective action members

6

would then be given.  Next, at the second step, all counsel should be aware there may be potential similarities in problems of classwide proof at step two.  Plaintiffs' new counsel would have an opportunity to address them.  *Deane v. Fastenal Co.*, No. 4:11-cv-00042-YGR, 2013 WL 675462, at *2–3 (N.D. Cal. Feb. 25, 2013) (Judge Yvonne Gonzales Rogers).

Plaintiffs have until **NOON ON JANUARY 24** to substitute in independent and adequate replacement counsel.  If no replacement counsel enters the case, plaintiffs' individual claims can proceed with existing counsel (so long as all individual plaintiffs consent).  If independent and adequate replacement counsel are substituted, existing counsel cannot proceed on any claims, including the individual FLSA claims.  To be clear, this order does not allow existing counsel — Sanford Heisler LLP and Law Offices of Thomas Marc Litton — to proceed in any way to represent the FLSA collective action.

**IT IS SO ORDERED.**

Dated:   January 8, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE